**Dianne and Gary DAWSON, Plaintiffs,**

v.

**ORKIN EXTERMINATING COMPANY, INC., Defendant.**

**Civ. A. No. 89–A–1956.**

United States District Court, D. Colorado.

Feb. 20, 1990.

William D. Meyer, Baine P. Kerr and Reed D. Benson, Hutchinson, Black, Hill & Cook, Boulder, Colo., for plaintiffs.

John R. Trigg and Arthur R. Karstaedt, Hall & Evans, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

ARRAJ, District Judge.

This matter is before the court on two formal motions. The first is the Motion of Plaintiffs Dianne and Gary Dawson ("Dawsons") to Remand under 28 U.S.C. § 1447(c) (1988) "on the basis of [a] defect in removal procedure." In the event that the court remands, Defendant has requested that it certify the issue of interpretation of 28 U.S.C. § 1446(b) (1988) to the Tenth Circuit. The second is the Motion of Defendant Orkin Exterminating ("Orkin") to Disqualify Plaintiffs' Counsel for an alleged violation of professional ethics. In their response to Defendant's Motion to Disqualify, Plaintiffs have requested that the court impose sanctions against Defendant and its counsel under Rule 11, Fed.R. Civ.P. In addition to considering the extensive briefs by the parties, I heard testimony and oral argument regarding the Motion to Remand at a hearing on January 19, 1990. Defendant filed its Motion to Disqualify after the hearing and both parties subsequently submitted briefs. After reviewing these papers, I find that additional oral argument would not materially assist the court in deciding the pending motions. Local Rule 402 G.

## ANALYSIS

### I. *Plaintiffs' Motion to Remand*

■ Defendant bears the burden of establishing its right to removal, including its compliance with the requirements of the removal statute. *Blow v. Liberty Travel, Inc.,* 550 F.Supp. 375, 375–76 (E.D.Pa.1982) (citation omitted). *See Miller v. Stauffer Chem. Co.,* 527 F.Supp. 775, 777 (D.Kan. 1981) (citation omitted). The statute governing removal provides, in pertinent part:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service *or otherwise,* of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based....

28 U.S.C. § 1446(b) (emphasis added). Therefore, Defendant must demonstrate that it did not receive a copy of the initial pleading, "through service or otherwise," within the statutory thirty-day period.

The threshold issue this court must decide is on what date Defendant first received Plaintiffs' complaint, which was filed in Colorado District Court, Boulder County, and date-stamped August 24, 1989 ("the Complaint"). Plaintiffs contend that Defendant received a copy of the Complaint on September 30, 1989. Defendant claims not to have received it until Plaintiffs effected formal service on October 20, 1989. It is undisputed that Defendant filed its Notice of Removal on November 9, 1989.

Camilla Ross, legal secretary to Baine Kerr ("Kerr"), of Hutchinson, Black, Hill and Cook, Plaintiffs' counsel, testified that Kerr finalized the draft of a settlement demand letter ("the Kerr Letter"), which she subsequently prepared and gave to him for his signature. She also gave him several attachments to which the Kerr Letter explicitly referred: a one page authorization for a settlement demand that was signed by the Dawsons on September 15, 1989 ("the Demand Authorization"), a letter dated September 26, 1989, from Saralee McGroarty, M.D., to Kerr concerning Dianne Dawson's medical condition ("the McGroarty Letter"), and a copy of the Complaint, which had been dated-stamped "August 24, 1989" by the state district court in Boulder County. After signing

the Kerr Letter, Kerr returned it and the three enclosures to Ross, who put them into an envelope and posted the envelope certified mail on September 28, 1989.

On September 30, 1989 Defendant received the Kerr Letter and the Demand Authorization.[1] On that day, Amy Fisher ("Fisher"), Defendant's Broomfield, Colorado, office manager, opened the envelope that Kerr had sent, read the Kerr Letter "thoroughly [her]self," Transcript of Hearing dated January 19, 1990 ("Tr.") at 20, 22–23 (Fisher testimony), called the branch manager of the Broomfield office, Stephen Crandall ("Crandall"), who was at home, and read it to him. After reviewing the materials himself, Crandall phoned Milton Graff ("Graff"), his boss in Defendant's Kansas City office, and read him the "gist" of the Kerr Letter. Tr. at 37–38 (Crandall testimony). It apparently did not occur to Crandall that anything was missing, and Graff did not ask him whether all of the materials to which the Kerr Letter referred actually were in the package of materials he had received.

On Monday, October 2, 1989, Crandall phoned Sheron Russell ("Russell"), a legal assistant in Defendant's legal department in Atlanta, Georgia. During that conversation, he did not indicate whether there were any enclosures or attachments to the Kerr Letter. She requested that he send her (via Federal Express) "a copy of everything that he had received [. . . .] [a]s well as a copy of everything that he had in the branch." Tr. at 43 (Russell testimony). Crandall sent the materials, but apparently did not maintain a copy of them for his files.

On October 3, 1989, Russell received a Federal Express package from Crandall. In it, she found the Kerr Letter, the Demand Authorization and the McGroarty Letter. Even though she "specifically noticed that there was not a complaint at-

tached," she did not call Crandall to indicate that it was missing. Tr. at 44–45 (Russell testimony). Neither did she attempt to obtain a copy of the Complaint from anyone else: It appears that the first time that Defendant's Atlanta office indicated to Defendant's Broomfield office that it did not possess a copy of the Complaint was when Orkin was served with formal process.

Ross testified that the Kerr Letter and three other enclosures (including the Complaint) were completed and sent by certified mail to Defendant. Defendant admits receiving the Kerr Letter and some of the enclosures on September 30, 1989. Although the Kerr Letter referred specifically to the Complaint, however, neither Defendant's Broomfield office manager (who read that letter twice), nor the Broomfield office's branch manager (to whom the office manager had read the letter and who had reviewed it himself), nor the branch manager's boss in Defendant's Kansas City office (to whom the branch manager read the "gist" of it) inquired as to its whereabouts. Even the legal assistant in Defendant's Atlanta office apparently made no inquiry as to the allegedly missing Complaint until Defendant was served with formal process. On the basis of Defendant's glaring, unexplained omissions, Camilla Ross' credible testimony and the other materials submitted by the parties, the court finds that Defendant received a copy of the Complaint on September 30, 1989, when Crandall received the Kerr Letter and other enclosures in Defendant's Broomfield office.

■ The legal issue raised by these facts concerns the proper interpretation· of the statutory language requiring the filing of a Notice of Removal "within thirty days after the receipt by the defendant, through service *or otherwise*, of a copy of the initial pleading setting forth the claim for relief

---

1. Stephen Crandall, the branch manager of Defendant's Broomfield office, gave conflicting accounts as to what materials he received from Kerr. In his affidavit, he stated that he received by certified mail an envelope containing the Kerr Letter and the McGroarty Letter. In the hearing, however, he testified that he received the Kerr Letter and the Demand Authorization. When confronted with this inconsistency, Crandall stated that he saw the Demand Authorization but admitted that he "honestly [didn't] know" whether the McGroarty Letter was attached or not. *See* Tr. at 35–36 (Crandall testimony).

upon which such action or proceeding is based...." 28 U.S.C. § 1446(b) (emphasis added). Service of process occurred on October 20, 1989. If the notice period runs from that date, as Defendant maintains, then Defendant's filing of its Notice of Removal on November 9, 1989 was timely. If, however, receipt of a copy of the Complaint on September 30, 1989 triggered the running of the thirty-day period, as Plaintiff contends, then Defendant's Notice was not timely.

Although this issue apparently is one of first impression in this circuit,[2] several other federal courts have wrestled with it. There is a split of authority. *See* Annotation, *When Period for Filing Petition for Removal of Civil Action from State Court to Federal District Court Begins to Run under 28 U.S.C.S. § 1446(b)*, 16 A.L.R.Fed. 287, 309–16 (1973 & Supp.1989). One line of cases, on which Defendant relies, generally follows the position articulated in *Love v. State Farm Mutual Auto. Ins. Co.*, 542 F.Supp. 65 (N.D.Ga.1982). *See Conticommodity Svcs., Inc. v. Perl*, 663 F.Supp. 27, 28 (N.D.Ill.1987) (and cases cited therein). These cases stand for the proposition that the removal period begins running "on the date the defendant has been properly served pursuant to state law *and* has received a copy of the complaint 'through service or otherwise.'" *Id.* at 28 (emphasis in original) (footnote omitted). This view is supported by two arguments. The first is premised on an interpretation of the provision's legislative history:

"The 'or otherwise' language was added to the statute in 1949. Before the relevant amendment, the statute read 'within 20 days after commencement of the action or service or process, whichever is later.' Pursuant to case law interpreta-

tion, the removal period could not begin until service of process was properly obtained. A problem arose in those states which allowed a plaintiff to commence a suit without filing a complaint. In such cases the removal period could expire before the defendant received a copy of the complaint. Defendant would have to decide whether to petition for removal before knowing what the suit was all about.

"Thus, Congress revised § 1446(b).... This change was intended to expand the removal period in states which allowed plaintiff to commence a suit without filing a complaint. Plaintiff is still required to properly serve defendant. The 'or otherwise' language pertains only to those states where plaintiff can commence a suit without filing or serving [an] initial pleading until some time later."

*Id.* at 29, *quoting Thomason v. Republic Ins. Co.*, 630 F.Supp. 331, 333–34 (E.D.Cal. 1986) (citations omitted). *See also Love, supra*, 542 F.Supp. at 67–68. The second rationale is that "a contrary holding would 'diminish the right to removal[ ] by permitting a plaintiff to circumvent the already existing requirement of personal service through informal service.'" *Conticommodity Svcs., supra*, 663 F.Supp. at 29, *quoting Love, supra*, 542 F.Supp. at 68.

I believe that the *Love* approach is flawed for two reasons. First, its reading of the legislative history contravenes the statute's clear and unambiguous language. *Conticommodity Svcs., supra*, 663 F.Supp. at 27. Where the statute is unambiguous, this court should follow its plain meaning. As to the second rationale offered in support of the *Love* view, its dire prediction is without merit. Whether or not a defendant

---

**2.** The Tenth Circuit noted in *Ardison v. Villa*, 248 F.2d 226, 227 (10th Cir.1957) that

[t]he manifest purpose of starting the period of removal from the date of the service of the 'initial pleading' is to enable the defendant to intelligently ascertain removability from the face of such initial pleading, so that in his petition for removal, he can make a " * * * short and plain statement of the facts which entitle him or them to removal * * *" as required by 28 U.S.C. § 1446(a).

The issue in *Ardison* was whether receipt of a summons constituted an "initial pleading" sufficient to trigger the running of the removal notice period under 28 U.S.C. § 1446(b), however, not whether receipt of a copy of a filed complaint that was date-stamped by the state court was received "through service or otherwise." To the extent that *Ardison* referred to service of process as triggering the removal notice period, such reference was *dicta*.

removes an action, he must perfect service to maintain that action either in federal or state court. Thus, a litigant will never be able to circumvent formal process. *Id.* at 29 (footnote omitted). Additionally:

> should a defendant wish to stand upon his right to the stricter state process rules, he may remain in the state forum and present a motion to quash there. It is difficult to see how this choice between state and federal service rules—which mirrors the procedural choices at stake in any decision to remove—tends to undercut the removal right.

*Id.*

The other line of authority interprets the statutory language more literally and generally follows the view expressed in *Tyler v. Prudential Ins. Co. of America,* 524 F.Supp. 1211 (W.D.Pa.1981). Cases adopting this view stand for the proposition that the statutory period is not necessarily triggered by service of process. *See Conticommodity Svcs., supra,* 663 F.Supp. at 30 (and cases cited therein). I believe that this is the better view and adopt it here.

The *Tyler* position is also supported by two rationales. The first is based upon an interpretation of the legislative history of § 1446(b) that differs from the view discussed in *Love:*

> "The 1949 amendment sought to eliminate th[e] unfairness [of the interaction of the prior rule with diverse state procedures] by providing a time limit which would operate with a greater degree of uniformity throughout the federal system.... Thus, the key to the time for removal became actual or constructive receipt by the defendant of the initial pleading setting forth the removable claim."

*Conticommodity Svcs., supra,* 663 F.Supp. at 30, *quoting French v. Banco Nacional de Cuba,* 192 F.Supp. 579, 580 (S.D.N.Y. 1961) (citation omitted); *Tyler, supra,* 524 F.Supp. at 1213 (citation omitted). The second and most convincing argument for the *Tyler* view is that removal statutes are to be construed narrowly, *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941), and

that the "straightforward, unambiguous language of the statute and the absence or ambivalence of any congressional intent on the issue" strongly suggest that the statutory period is triggered by "receipt of an initial pleading by the defendant, irrespective of the technicalities of state service of process law." *Conticommodity Svcs., supra,* 663 F.Supp. at 30–31. *See York v. Horizon Fed. Sav. & Loan Ass'n,* 712 F.Supp. 85, 89–90 (E.D.La.1989) (citation omitted); *Pic–Mount Corp. v. Stoffel Seals Corp.,* 708 F.Supp. 1113, 1118 (D.Nev. 1989); *N. Jersey Sav. & Loan Ass'n v. Fidelity & Deposit Co. of Md.,* 125 F.R.D. 96, 99–100 (D.N.J.1988); *Tyler, supra,* 524 F.Supp. at 1213 (citation omitted).

Crandall received a copy of Plaintiffs' Complaint—which was date-stamped August 24, 1989 by the state court—by certified mail on September 30, 1989. I conclude that this receipt triggered the thirty-day statutory period. *See Uhles v. F.W. Woolworth Co.,* 715 F.Supp. 297 (C.D.Cal. 1989) (defendant's receipt of a courtesy copy of a complaint and summons at settlement negotiations sufficient to trigger the statutory period); *N. Jersey Sav. & Loan Ass'n, supra,* 125 F.R.D. 96 (receipt of a courtesy copy of the complaint sent by plaintiff through the mail sufficient to trigger the running of the statutory period even though the state court complaint had not yet been filed). The Complaint provided Defendant with enough information about the nature of the claim to determine whether to file a notice of removal. *See DeBry v. Transamerica Corp.,* 601 F.2d 480, 489 (10th Cir.1979) ("the purpose of the starting of the period of the limitations is important to allow the defendant to intelligently ascertain removability so that in his petition for removal he can make a simple and short statement of the facts"). Since Defendant's receipt of a copy of the Complaint occurred more than thirty days before Defendant actually filed its Notice of Removal, I hold that this filing was not timely. This court has noted that, "[w]hile compliance with the removal time limit is not a jurisdictional prerequisite, the requirement is mandatory and may be insisted upon, absent waiver, by the party seek-

ing remand." *Adams v. W. Steel Bldgs., Inc.*, 296 F.Supp. 759, 761 (D.Colo.1969). Here, Defendant failed to comply with the removal statute, so Plaintiffs' Motion to Remand under 28 U.S.C. § 1447(c) must be granted.

■ Defendant has requested that the court certify its order to the Tenth Circuit pursuant to 28 U.S.C. § 1292(b) (1982 & Supp. V 1987). That section provides, in pertinent part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Generally, orders to remand are unreviewable on appeal or otherwise as long as the removal court's order is based on grounds set out in 28 U.S.C. § 1447(c). *See* 28 U.S.C. § 1447(d) (1982). As recently amended, the removal statute provides that one ground for a motion to remand is "any defect in removal procedure." 28 U.S.C. § 1447(c). Since this provision is the basis for the decision to remand, this court's order of remand would be unreviewable by the Tenth Circuit. *In re Bear River Drainage Dist.*, 267 F.2d 849, 851 (10th Cir.1959) (citations omitted); 1A J. Moore & B. Ringle, *Moore's Fed. Practice* ¶ 0.169[2.–1], at 688–90 (2d ed. 1989); 9 J. Moore, B. Ward & J. Lucas, *Moore's Fed. Practice, supra,* ¶ 110.22[2], at 260 (footnote omitted). Therefore, Defendant's request for certification must be denied.

II. *Defendant's Motion to Disqualify Plaintiffs' Counsel and Plaintiffs' Request for Sanctions against Defendant's Counsel*

■ Defendant contends that Kerr and the law firm with which he practices, Hutchinson, Black, Hill and Cook, should be disqualified under DR 5–102(A) of the Code of Professional Responsibility ("the Code") because Kerr, Plaintiffs' counsel, testified at the hearing on Plaintiffs' Motion to Remand on January 19, 1990 concerning whether he had sent a copy of the state-court complaint to Defendant. Plaintiff contends that DR 5–102(A) is inapplicable to pre-trial, procedural matters, that there is no evidence that Plaintiffs' counsel will or ought to be called to testify at trial and that even if DR 5–102(A) applies, the situation presented by this matter falls within an exception to the rule. Plaintiffs also seek sanctions under Rule 11, Fed.R. Civ.P., against Defendant and its counsel for filing an allegedly frivolous Motion to Disqualify.

As adopted by the Colorado Supreme Court, the Code applies to the instant controversy. Local Rule 306. Under its provisions, the burden is on Defendant here to establish the grounds for disqualification. *Kline Hotel Partners v. Aircoa Equity Interests, Inc.*, 708 F.Supp. 1193, 1194 (D.Colo.1989) (citation omitted); *People ex. rel. Woodard v. Dist. Court*, 704 P.2d 851, 853 (Colo.1985) (citations omitted). Rule DR 5–102(A) (1977) provides, in pertinent part, that

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from *the conduct of the trial* and his firm, if any, shall not continue *representation in the trial* ....

(emphasis added). The rule does not mention pre-trial proceedings. *Moyer v. 1330 Nineteenth St. Corp.*, 597 F.Supp. 14, 17 (D.D.C.1984). In my judgment, DR 5–102(A) applies to lawyer testimony at trial and is designed primarily to preclude the unseemly situation in which the lawyer must argue his own credibility before the jury. *See Williams v. Dist. Court*, 700 P.2d 549, 553 (Colo.1985). *See also Bd. of Educ. v. L.R. Foy Constr. Co., Inc.*, 237 Kan. 1, 697 P.2d 456, 459 (1985) (attorney who testified to court as to earlier procedural matter did not violate DR 5–102(A)); *People v. Superior Ct.*, 84 Cal.App.3d 491, 148 Cal.Rptr. 704, 711 (1978) (where attorney will only be testifying at pretrial hearings where the trier of fact is a judge,

danger of fact-finder believing that attorney is more believable than a lay witness does not exist). Here, Plaintiffs have asked for a jury trial and counsel testified in a hearing before me concerning remand, a matter that is collateral to the products liability claim forming the basis for Plaintiffs' complaint. The rule is therefore inapplicable. *Cf. Moyer, supra,* 597 F.Supp. at 17 (disqualifying attorney and his firm from trying the case but permitting both to act as counsel in pre-trial proceedings). Furthermore, this court's findings of facts do not rely on Kerr's testimony, which is merely cumulative of Ross' testimony.

■ Even if DR 5–102(A) applied, however, this court has noted that the sanction of disqualification "should not be imposed, especially the sanction of complete disqualification of a law firm, unless the claimed misconduct in some manner *taints* the underlying trial or the legal system." *Greenebaum–Mountain Mortgage Co. v. Pioneer Nat'l Title Ins. Co.,* 421 F.Supp. 1348, 1353 (D.Colo.1976) (emphasis in original). I conclude that there is no such taint here.

■ Since Defendant has failed to carry its burden to establish the grounds for disqualification of Kerr or his law firm, its Motion must be denied.[3] Although I am troubled by defense counsel's filing this Motion three days after his failure to object to the testimony at the time it was offered, I do not find that Rule 11 sanctions against Defendant or its counsel are warranted. Plaintiff baldly asserts in its response to Defendant's Motion to Disqualify that "[t]here is scant authority on this issue, presumably because the answer is obvious." Plaintiffs' Response to Motion to Disqualify and Request for Sanctions at 2. If the answer were obvious, the court would not have raised the issue in the first instance during the hearing on the Motion to Remand.

Accordingly,

IT IS ORDERED:

1. That this case be, and the same hereby is, REMANDED to the District Court, Boulder County, Colorado.

2. That Defendant's request, pursuant to 28 U.S.C. § 1292(b), to certify the issue of the proper interpretation of 28 U.S.C. § 1446(b) to the Tenth Circuit Court of Appeals be, and hereby is, DENIED.

3. That Defendant's Motion to Disqualify Plaintiffs' Counsel be, and hereby is, DENIED.

4. That Plaintiffs' request for sanctions under Rule 11, Fed.R.Civ.P., be, and hereby is, DENIED.

Each party will pay their/its own costs concerning remand.

---

**3.** Defendant also has argued that the actions of Plaintiffs' counsel violated Canon 9 of the Code by failing to avoid even the appearance of impropriety. The corresponding rule, DR 9–101, is entirely inapplicable to the facts at bar.