**APACHE NITROGEN PRODUCTS, INC., Plaintiff,**

**v.**

**HARBOR INSURANCE CO. et al., Defendants.**

**No. CIV 92–685 TUC RMB.**

United States District Court, D. Arizona.

Jan. 28, 1993.

Laura W. Janzik, Kimble & Curry, Phoenix, AZ, for plaintiff Apache Nitrogen Products.

Alison Lewis, Teilborg, Sanders & Parks, P.C., Phoenix, AZ, for defendant Continental Ins. Co.

Stephen Kimble, Kimble, Gothreau & Nelson, P.C., Tucson, AZ and Robert P. Siegel, Sheft & Sheft, New York City, for defendant Stonewall Ins. Co.

## ORDER

BILBY, District Judge.

This action arises from the Environmental Protection Agency's (EPA) investigation of potential violations of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) at plaintiff Apache Nitrogen Products' St. David, Arizona commercial explosives manufacturing facility. Beginning in late 1987 Apache Nitrogen Products (Apache) made repeated demands to its eighteen liability insurers, including defendants Continental Insurance Co. (Continental) and Stonewall Insurance Co. (Stonewall), for coverage in relation to the ongoing EPA investigation. These demands for coverage were unavailing, and on July 31, 1992, Apache filed suit against Continental, Stonewall, and its sixteen other liability insurers in Cochise County Superior Court, seeking declaratory relief and damages.

Rather than immediately initiate service of process pursuant to the Arizona Rules of Civil Procedure, Apache chose instead to mail "courtesy" copies of the Complaint to defendants Continental and Stonewall. Ac-

companying each courtesy copy was a cover letter from plaintiff's counsel, Laura W. Janzik and dated September 1, 1992. That letter reads as follows:

Enclosed as a courtesy to you is a copy of a complaint which has been filed in Apache's continuing efforts to obtain coverage pursuant to the terms of its insurance with you. In a final effort to resolve this matter before service of the summons and complaint and the commencement of full-blown litigation, which will be costly and time-consuming for all parties, this is to once again ask that you reconsider the position you have taken regarding Apache's demands for coverage under your policies.

Having received its courtesy copy of the complaint on September 8, 1992, Stonewall removed to this Court on September 25, 1992.[1] After having received notice of the removal and in response to the inquiry of Stonewall's counsel, Stephen Kimble, Janzik stated, in a letter dated September 30, 1992, that "no defendant has been served in this matter, but we will be happy to notify you when that occurs." In the same letter, Janzik requested whether Kimble would agree to accept service on Stonewall's behalf. In a responsive letter of October 13, 1992, Robert P. Siegel, Stonewall's associate counsel, advised Janzik that Stonewall's counsel was not authorized to accept service on Stonewall's behalf. There were no further communications among counsel, nor was service effectuated on Stonewall. Instead, Apache on November 5, 1992 requested that the Clerk of the Court enter Stonewall's default. In support of this request, Apache argued that Stonewall's receipt on September 8 of the courtesy copy of the complaint triggered its response time under Federal Rule of Civil Procedure 81(c), which governs procedure in removed actions. Accordingly, Stonewall's default was entered on November 9, 1992. Contemporaneously, Apache moved for a default judgment against

Stonewall. On November 19, 1992 Stonewall moved to set aside the entry of default.

A similar course of events led to defendant Continental's alleged default and its concomitant motion to set aside the entry of default. Upon receipt, also on September 8, 1992, of its courtesy copy of the Complaint, Continental's counsel, Alison Lewis, contacted Janzik to discuss the pending lawsuit. After confirming that Continental had not yet been served, Janzik agreed that service would not be effectuated for thirty days from September 23, 1992 so that Continental could review Apache's allegations and formulate a response to Apache's coverage demand. On October 7, 1992, Continental removed the action to this Court.[2] On October 21, 1992, Janzik, who was on notice of Continental's removal, agreed to further delay service until October 30, 1992. On November 5, 1992, Continental having failed to respond to Apache's coverage demand, Apache requested that the Clerk of the Court enter Continental's default pursuant to Rule 81(c). Contemporaneously, Apache moved for entry of default judgment. On December 3, 1992, Continental moved to set aside the entry of default.

## DISCUSSION

Confusion over identical language found in both Rule 81(c) and the federal removal statute lies at the heart of the current dispute. Section 1446(b) of Title 28 of the United States Code provides in pertinent part that:

The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service *or otherwise,* of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based. . . .

28 U.S.C. § 1446(b) (emphasis added). The cases are split as to when this thirty day

---

**1.** As will be discussed in greater detail below, Stonewall's decision to remove even though it had not yet been served was based on its concern that receipt of the courtesy copy of the complaint might be construed as commencing

the thirty day period within which removal may be effected.

**2.** Continental's removal was based on the same concern that drove Stonewall to remove.

period starts to run. The majority view, often described as the *Love* approach, is that the defendant must both be served with process and receive a copy of the initial pleading before the clock starts ticking. *See, e.g., Love v. State Farm Mutual Auto Ins. Co.*, 542 F.Supp. 65, 67 (N.D.Ga. 1982). But a significant minority of cases follow the so-called *Tyler* approach, and, focusing on the words "or otherwise," hold that the thirty-day period commences upon defendant's simple receipt of a copy of the initial pleading, regardless of whether service has been effectuated. *See, e.g., Tyler v. Prudential Ins. Co. of America*, 524 F.Supp. 1211, 1213 (W.D.Pa.1981). Within the Ninth Circuit, the reported cases reflect this split of authority, the *Love* approach holding a three-to-two edge. *Compare Bennett v. Allstate Ins. Co.*, 753 F.Supp. 299 (N.D.Cal.1990) (service required) and *Student A. v. Metcho*, 710 F.Supp. 267 (N.D.Cal.1989) (service required) and *Thomason v. Republic Ins. Co.*, 630 F.Supp. 331 (E.D.Cal.1986) (service required) *with Uhles v. F.W. Woolworth Co.*, 715 F.Supp. 297 (C.D.Cal.1989) (service *not* required) and *Pic–Mount Corp. v. Stoffel Seals Corp.*, 708 F.Supp. 1113 (D.Nev.1989) (service *not* required).

In view of this conflicting authority, receipt of the courtesy copies of the Complaint presented Continental and Stonewall with a dilemma: To await service of process or to remove immediately? Lacking foresight into which of the two conflicting approaches this Court would follow, both Stonewall and Continental prudently chose not to risk their right to remove by awaiting service. Instead, each defendant, acting independently and without knowledge of the other's actions, filed a notice of removal to this Court within thirty days of its receipt of the courtesy copy.

By so doing, however, defendants unwittingly created a new problem; ironically, one that involves the interpretation of language identical to that of the federal removal statute discussed above. Federal Rule of Civil Procedure 81(c) provides that:

> In a removed action in which the defendant has not yet answered, the defendant shall answer or present the other defenses or objections available under these rules within 20 days after the receipt through service *or otherwise* of a copy of the initial pleading setting forth the claim for relief upon which the action or proceeding is based....

Fed.R.Civ.P. 81(c) (emphasis added). Interpreting this "service or otherwise" language of Rule 81(c) in accordance with the *Tyler* approach to the identical language of section 1446(b), Apache reasoned that defendants' receipt of the courtesy copies of the Complaint herein constituted "receipt" within the meaning of Rule 81(c), thus commencing the twenty day response period. And as neither Stonewall nor Continental answered within twenty days of September 8, 1992, Apache requested and received the entry of their default.

Defendants Stonewall and Continental vigorously dispute Apache's reading of Rule 81(c), protesting that default was improperly entered and should be set aside. Apache, in contrast, seeks entry of default judgment against both defendants. This Court's determination of the parties' respective claims requires a two-part analysis. First, is the question whether Stonewall and Continental in fact are in default. Second, if they are, should their default be set aside, or alternatively, should default judgment be entered against them?

## I

Whether defendants are in default hinges on the construction given the "service or otherwise" language of Rule 81(c). If Apache's interpretation is accepted, then defendants indeed are in default; if not, then the opposite conclusion holds.[3]

---

**3.** Both Continental and Stonewall advance the argument that this Court lacks personal jurisdiction over them, since plaintiff has not fulfilled the requirements of Rule 4 regarding service of process. In fact, the issue of personal jurisdiction in this case turns on the construction given

Rule 81(c). If Apache's interpretation is accepted, then Rule 81(c) may be read as negating the need for compliance with Rule 4. Under this theory, removal to federal district court equals consent to that district court's exercise of personal jurisdiction over the removing defendant.

## A. *Discerning Congress' Intent*

To interpret Rule 81(c) properly requires discerning what Congress meant when it added the "service or otherwise" language to the Rule in 1948. Toward this end, it is necessary to examine both the legislative history of the amendment and also the way in which Rule 81(c) fits with certain other provisions of the Federal Rules of Civil Procedure.

Initially, the Court notes that the "service or otherwise" language of Rule 81(c) may not be analyzed in a vacuum; rather it must be construed to harmonize with the parallel language of the federal removal statute. For there can be no doubt that the essentially contemporaneous insertion of the "service or otherwise" language in both Rule 81(c) and 28 U.S.C. § 1446(b) was part of a conscious legislative effort to create consistency in the law governing removal. *See* 7 James Wm. Moore et al., Moore's Federal Practice ¶ 81.01[16]–[18] (2d ed. 1992). In fact, resort to the Advisory Committee Note to the proposed amendment to Rule 81(c) clearly shows that the "service or otherwise" language was drawn directly *from* the proposed amendment to section 1446(b) and has no independent meaning: "The need for revision of the third sentence of [Rule 81(c)] is occasioned by the procedure for removal set forth in revised Title 28, USC, § 1446.... The revised third sentence of Rule 81(c) is geared to this proposed statutory amendment...." Committee Note of 1948 to Advisory Committee's Proposed Amendment to Subdivision (c), *reprinted in* 7 James Wm. Moore et al., *supra,* at ¶ 81.01[18]. Therefore, it is necessary to examine the legislative intent underlying the insertion of the "service or otherwise" language in section 1446(b) in order to interpret Rule 81(c) properly.

The "service or otherwise" language was added to the federal removal statute in 1949 to cure a statutory defect. Prior to the amendment, section 1446(b) provided that "[t]he petition for removal of a civil action or proceeding may be filed within twenty days after commencement of the action or service of process, whichever is later." Under this original provision then, process had to be served before the removal period would commence to run. As the Advisory Committee noted in proposing that Rule 81(c) be amended, however, the original version of section 1446(b) caused "trouble in states where an action may be both commenced and service of process made without serving or otherwise giving the defendant a copy of the complaint or other initial pleading." Committee Note of 1948 to Advisory Committee's Proposed Amendment to Subdivision (c), *reprinted in* 7 James Wm. Moore, *supra,* at ¶ 81.-01[18]. In such states, the clock could start to tick even though the defendant had not yet received a copy of the plaintiff's initial pleading.

To remedy this obvious procedural shortcoming, and to make the federal removal procedure "fit the diverse procedural laws of the various States," section 1446(b) was amended to require that a copy of the initial pleading be provided to defendant, either "through service or otherwise," as a prerequisite to the removal period commencing to run. S.Rep. No. 303, 81st Cong., 1st Sess. (1949), *reprinted in* 1949 U.S.C.C.A.N. 1248, 1248. It is evident that the intent of the amendment *was not* to eliminate the existing requirement that service first be effectuated. *See* H.Rep. 352, 81st Cong., 1st Sess. (1949), *reprinted in* 1949 U.S.C.C.A.N. 1248, 1268 (discussing amendment's effects under both New York and Kentucky approaches, and making clear that under either one, service of pro-

---

Certainly, this approach would be consistent with the due process concerns that animate the personal jurisdiction case law. *See, e.g., Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985); *Mullane v. Central Hanover Bank of Trust,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950); *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). If, on the other hand, Apache's interpretation of Rule 81(c) is rejected, then defendants are correct in their assertion that this court may not exercise personal jurisdiction over them unless and until the requirements of Rule 4 have been met. *Benny v. Pipes,* 799 F.2d 489, 492 (9th Cir.1986).

cess is a prerequisite). Accordingly, a solid majority of courts to have surveyed section 1446(b)'s legislative history in any depth have concluded that the removal period does not commence until process has been served *and* a copy of the initial pleading has been provided, whether it be through service "or otherwise." *E.g. Thomason v. Republic Ins. Co.*, 630 F.Supp. 331 (E.D.Cal.1986); *Love v. State Farm Mutual Auto Ins. Co.*, 542 F.Supp. 65, 67 (N.D.Ga.1982). Indeed, a number of courts following the contrary *Tyler* approach nevertheless acknowledge the validity of the foregoing legislative history of section 1446(b). *See Pic–Mount Corp. v. Stoffel Seals Corp.*, 708 F.Supp. 1113, 1117–18 (D.Nev.1989) (reliance upon *Tyler*'s "alternative" interpretation of the legislative history "may be misplaced"); *Conticommodity Serv. v. Perl*, 663 F.Supp. 27, 30 (N.D.Ill. 1987) (similarly questioning *Tyler*'s version of the legislative history).

## B. *The Tyler Approach and its Justifications*

Despite the fact that the legislative history of section 1446(b) fairly conclusively shows that neither the Advisory Committee, the Supreme Court, nor Congress intended to do away with the prerequisite of service, a significant minority of courts have chosen to follow *Tyler*'s interpretive approach to the words "service or otherwise." In support of their position, these courts advance a number of arguments, which will be discussed below.

### 1. Certainty

One justification advanced is that a standard based not on service of process, but instead on the simple receipt of a copy of the initial pleading will "provide a uniform and definite time for the defendant to remove the action." *Tyler, supra*, 524 F.Supp. at 1213 (quoting *Haun v. Retail Credit Co.*, 420 F.Supp. 859, 863 (W.D.Pa. 1976)). This argument is of dubious merit. While very little in life is truly certain, it seems safe to say that a standard which requires formal service of process promotes certainty far more effectively than

one which accepts receipt "otherwise" as its sole criteria.

### 2. The Plain Meaning of "service or otherwise"

Quite a few courts opine that the "plain meaning" of the words "receipt ... through service or otherwise" supports the *Tyler* approach. *E.g., Dawson v. Orkin Exterminating Co.*, 736 F.Supp. 1049, 1052–53 (D.Colo.1990); *Conticommodity Svcs., Inc. v. Perl*, 663 F.Supp. 27, 30–31 (N.D.Ill.1987). But this conclusion begs the question: if in fact the words "service or otherwise" had a plain meaning, the cases would not be so hopelessly split over their proper interpretation. In truth, language is inherently ambiguous. *See, e.g.*, 3 Arthur L. Corbin, Corbin on Contracts § 535 (1960) ("no word has one true and unalterable meaning"). Nevertheless, over the centuries courts have developed a variety of interpretive tools to use in resolving the ambiguities that necessarily attach when written laws must be translated into legal decisions. The reliance of courts and litigants on claimed "plain meaning" usually represents a conscious disregard of evidence that would lead to an undesired result, and not the existence of true unambiguity. To translate the words "service or otherwise" into terms of meaning requires looking to all available interpretive tools, and not simply relying on the false idol of "plain meaning."

### 3. Removal Jurisdiction Must be Strictly Construed

The final, and for several courts, the decisive factor favoring the *Tyler* approach is the dictum that removal jurisdiction should be strictly construed. *See, e.g. Pic–Mount, supra*, 708 F.Supp. at 1118; *Uhles v. F.W. Woolworth Co.*, 715 F.Supp. 297, 298 (C.D.Cal.1989). Thus, the reasoning goes, section 1446(b) must be interpreted in the manner that will most severely restrict the time period within which a defendant may remove to federal court. There are two significant flaws to this argument.

First, it represents an inaccurate reading of the general rule that removal jurisdic-

tion should be strictly construed. The case uniformly cited in support of the rule is *Shamrock Oil & Gas. Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). *See, e.g., Pic–Mount, supra,* 708 F.Supp. at 1118 (citing *Shamrock*); *Uhles, supra,* 715 F.Supp. at 298 (citing *Shamrock*). In *Shamrock,* the Supreme Court held that since the federal removal statute authorizes removal only "by the defendant or defendants therein," a plaintiff subjected to a counterclaim has no right to removal. *Shamrock, supra,* 313 U.S. at 106–109, 61 S.Ct. at 871–872. One of the bases for this conclusion was the consideration that:

> Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.

*Id.* at 109, 61 S.Ct. at 872 (quoting *Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934)). Stated more precisely, then, the dictum that removal jurisdiction must be strictly construed actually means that in the context of removal, a federal court must not expand its jurisdiction beyond the precise limitations set by Congress. There is a fine but distinct line between this principle and the approach followed by courts adopting the *Tyler* rule, which boils down to the assertion that federal courts should do everything in their power to defeat defendants' efforts to remove, regardless of Congress' actual intent.

Second, and relatedly, the argument advanced in support of *Tyler* ignores Congress' specific intent, relying instead on the general precept that removal jurisdiction should be strictly construed. The rule of construction that the specific controls over the general is so well-established that no citation to authority is necessary in its support. Here, as the legislative history clearly establishes, Congress did not intend to abrogate the requirement that service be effectuated when it added the words "or otherwise" to the federal removal statute in 1949. To insist that service is not a prerequisite to the commencement of the removal period is to disregard Congress'

specific intentions. The general rule regarding strict construction of removal jurisdiction is inapplicable under these circumstances.

### 4. Choosing between *Tyler* and *Love*

■ The foregoing analysis uncovers the weakness of the arguments advanced in favor of the *Tyler* approach. Accordingly, this Court rejects *Tyler* in favor of the rule established by *Love:* receipt "otherwise" does not eliminate the requirement that process be served before the thirty day period set by section 1446(b) commences to run. And since Rule 81(c) must be interpreted in harmony with section 1446(b), this Court further concludes that the twenty-day response time under Rule 81(c) does not commence to run until service has been effectuated.

### C. *Structural Considerations*

This conclusion is buttressed by an analysis of Rule 81(c) in the context of other relevant provisions of the Federal Rules of Civil Procedure. First of all, interpreting Rule 81(c) as urged by Apache would create a conflict with Rule 12, which provides that "[a] defendant shall serve an answer within 20 days *after the service of the summons and complaint* upon that defendant...." Fed.R.Civ.P. 12(a) (emphasis added). Of course, it is conceivable that Congress might wish to establish a different standard, outside the boundaries of Rule 12, to govern response time in removed actions. It is unimaginable, however, that such a significant alteration in the Federal Rules of Civil Procedure would be effected without mention by the Advisory Committee, the Supreme Court, or Congress itself. And a careful examination of the legislative history of Rule 81(c) reveals not one iota of evidence that such a change ever was intended.

Moreover, interpreting Rule 81(c) as urged by Apache would effectively abrogate a plaintiff's right under Rule 15 to amend its complaint "once as a matter of course at any time before a responsive pleading is served." Fed.R.Civ.P. 15(a). For if defendant is allowed to both remove

and answer before plaintiff has chosen to effectuate service, then plaintiff's right to amend once as of right will be eliminated.

Finally, Apache's reading of Rule 81(c) would create confusion in cases (such as this one) involving multiple defendants. For it is unclear whether the nonremoving defendants' response time would be governed by Rule 81(c) or Rule 12. This Court is hard pressed to believe that the Advisory Committee, the Supreme Court, and Congress all would have failed to address such an important issue had they in fact intended to abrogate the service requirement.

### D. *Savarese*

Before closing the book on "service or otherwise," it is necessary to address one final point. Plaintiff Apache submits that *Savarese v. Edrick Transfer & Storage,* 513 - F.2d 140 (9th Cir.1975), requires that defendants' default be sustained. In *Savarese,* defendant was served a copy of the summons and complaint on May 4, 1972 and subsequently removed to federal court on May 31, 1972. Defendant failed to answer, and its default was entered on January 22, 1973. Considerably complicating matters, plaintiff failed to file an affidavit of service until December 19, 1972; therefore, under the applicable state law, service of process technically was ineffective until January 18, 1973. Nevertheless, the district court refused to set aside the entry of default and instead granted default judgment.

The Court of Appeals relied on Rule 81(c) in affirming the district court's refusal to set aside the default judgment. *Savarese, supra* 513 F.2d at 143–44. Critical to the appellate court's decision was the fact that though technically flawed under state law, service of process had been properly effectuated under the Federal Rules. *Id.* at 144 & n. 7 (citing Fed.R.Civ.P. 4(g)). This fact is fatal to Apache's argument. For here, Stonewall and Continental were not served prior to the entry of default against them. Therefore, *Savarese* is inapplicable and Apache's reliance thereon unavailing.

### E. *Conclusion*

This Court rejects Apache's reading of Rule 81(c) and holds that service must be effectuated before the twenty-day response time specified in the Rule commences to run. Accordingly, the entry of default against defendants Stonewall and Continental must be set aside.

### II

But assuming *arguendo* that Apache's interpretation of Rule 81(c) is correct and that default was properly entered, this Court must consider whether that default should nevertheless be set aside. Federal Rule of Civil Procedure 55(c) provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." The standards for setting aside an entry of default under Rule 55(c) are less rigorous than those for setting aside a default judgment pursuant to Rule 60(b). *Hawaii Carpenters' Trust Funds v. Stone,* 794 F.2d 508, 513 (9th Cir.1986). While a district court may consider a wide variety of factors in exercising the broad discretion afforded by Rule 55(c), three considerations generally predominate: (1) whether good cause exists for the party's default; (2) whether the defaulting party has a meritorious defense; and (3) whether setting aside the default would prejudice the party who obtained it. *See, e.g., Benny v. Pipes,* 799 F.2d 489, 494 (9th Cir.1986); *Mendoza v. Wight Vineyard Management,* 783 F.2d 941, 946 (9th Cir. 1986); *Pena v. Seguros La Comercial, S.A.,* 770 F.2d 811, 814–15 (9th Cir.1985).

### A. *The Cause of Defendants' Default*

The alleged default of both defendants is attributable to defense counsels' belief that no response to the complaint was required until after service of process had been effectuated. In this regard, Apache's counsel clearly lulled defense counsel into a false sense of security, even after the notices of removal had been filed: Janzik and Continental's counsel discussed on several occasions the time frame within which ser-

vice might be effectuated; while Janzik specifically inquired whether Stonewall's counsel would accept service on Stonewall's behalf. It thus is apparent that Janzik shares significant responsibility for the present situation. Under these circumstances, it would be most inequitable to subject Continental and Stonewall to judgment by default. Clearly, the equities weigh heavily in favor of setting aside their default. *Cf. Savarese, supra* (where equitable considerations related to defense counsel's egregious conduct clearly animate both district and appellate courts' refusal to set aside default judgment).

## B. *Existence of Meritorious Defenses*

Both Continental and Stonewall allege the existence of numerous meritorious defenses.[4] Continental, reserving the right to add defenses later, asserts that it has the following defenses: (1) the administrative proceeding currently being pursued by EPA is not a "suit" which would give rise to a duty to defend or provide coverage; (2) the basis for Apache's potential liability under CERCLA does not constitute an "occurrence" within the meaning of the applicable policies; (3) EPA response costs are not "damages" within the meaning of the applicable policies; (4) the policies do not cover known losses; and (5) at least one of the policies contains a pollution exclusion. Similarly, Stonewall advances the following as a non-exhaustive catalogue of applicable defenses: (1) the policies exclude losses that were expected or intended; (2) the policies contain pollution exclusions; (3) the policies do not encompass an obligation to indemnify Apache in an action for equitable relief, such as that sought by EPA; (4) there is no coverage for damages to Apache's own property; (5) the losses complained of may constitute excludable "known losses"; and (6) the policies may not have been in force at the time the damages alleged occurred.

In response, Apache argues that defendants' "conclusory" assertions are insufficient to establish the existence of meritori-

ous defenses. Apparently, however, these assertions are not so conclusory that Apache is unable to understand them: it goes on to argue the merits of the various defenses asserted, predictably concluding that there are none. Apache's arguments must fail, however. The applicable standard for establishing the existence of a meritorious defense is "whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Hawaii Carpenters' Trust Funds, supra,* 794 F.2d at 513. Clearly, both Continental and Stonewall have established the possibility that they might prevail at a trial on the merits. This factor, too, weighs strongly in favor of setting aside defendants' default.

## C. *Prejudice to Plaintiff*

■ Defendants contend that there is no evidence that Apache will suffer prejudice of the sort relevant to this inquiry should their default be set aside. In response, Apache asserts the existence of two forms of prejudice: (1) delay; and (2) the cost of litigating the present motions to set aside default. As to delay, it must be noted that delay alone does not constitute the sort of prejudice cognizable upon a Rule 55(c) motion: "it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler,* 713 F.2d 907, 916 (2d Cir.1983) (quoting 10 Charles Alan Wright et al., Federal Practice & Procedure § 2699, at 536–37.) Apache has made no such showing, which is not surprising, since the "delay" here may be measured in weeks—the time between when answers should have been and will be filed—not, as Apache would have the Court believe, the five. years that have passed since Apache first notified its carriers of EPA's investigation. And Apache's claim that defending the instant motion to set aside default constitutes prejudice does not even merit discussion. In sum, Apache has not demon-

---

4. Both defendants have appended to their moving papers proposed Answers which they are

prepared to file should the Court set aside the entry of default.

strated that setting aside defendants' default will cause it to suffer the sort of prejudice relevant under the Rule 55(c) analysis.

## D. *Conclusion*

Both defendants' motions to set aside default pursuant to Rule 55(c) must be granted. Correspondingly, plaintiff's motions for default judgment must be denied.

## III

■ Both defendants and plaintiff alike request an award of costs and attorneys' fees. None of the parties suggest a legal basis for such an award. Rule 11, of course, allows this Court to impose an appropriate sanction upon a finding that a motion is not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...." Fed.R.Civ.P. 11. In light of the confusion among the district courts over the proper interpretation of the "service or otherwise" language of both section 1446(b) and Rule 81(c), it cannot be said that any party herein has violated Rule 11. Accordingly, each party is to bear its own costs and attorneys' fees.

## IV

IT IS HEREBY ORDERED that the motions of defendants Continental and Stonewall to set aside entry of default be and are GRANTED, and that plaintiff Apache's motions for entry of default judgment be and are DENIED. IT IS FURTHER ORDERED that plaintiff Apache shall have thirty days from the date of entry of this Order in which to effectuate service of process upon defendants Continental and Stonewall. IT IS FURTHER ORDERED that all parties' motions for costs and attorneys' fees be and are DENIED.

