**Dennis A. BENNETT and Victoria S. Bennett, Plaintiffs,**

v.

**ALLSTATE INSURANCE COMPANY, Hollis R. Miller, and Does 1 Through 5, Inclusive, Defendants.**

**No. C–90–1719 SC.**

United States District Court, N.D. California.

Oct. 3, 1990.

Ron Leaf, Martin & Leaf, San Mateo, Cal., for plaintiffs.

Robert H. King, Jr., Michael J. Hassen, Sonnenschein Nath & Rosenthal, San Francisco, Cal., for defendants.

## ORDER DENYING MOTION TO REMAND

CONTI, District Judge.

This action involves a coverage dispute brought originally in state court by the insureds, Victoria and Dennis Bennett (the "Bennetts"), against: (1) their insurer, Allstate Insurance Company ("Allstate"); and (2) Hollis R. Miller ("Miller"), the Allstate sales agent who sold them the policies which are the subject of this suit. Defendants removed this action based on diversity jurisdiction while at the same time admitting that the Bennetts and defendant Miller all reside in California. Acknowledging the lack of complete diversity, defendants have argued in their removal documents and in their opposition to the Bennetts' now pending motion to remand that Miller is a "sham defendant" who appears in the caption solely by virtue of his ability to thwart federal jurisdiction and against whom no valid cause of action exists. After reviewing the submissions of the parties, the court ordered further briefing on the issue of whether there is a valid cause of action for breach of a fiduciary duty against Miller under California law.

## BACKGROUND

The substance of this action is the Bennetts' claim that subsidence damage to their residence was covered by their Allstate homeowners policy. The Bennetts had been insured by an Allstate homeowners policy since 1972. During the term of their policy, the Bennetts' home mani-

fested signs of structural distress which at first they considered evidence of mere normal wear and tear. In December, 1988 they investigated further and learned that the house was actually suffering subsidence damage. Through their attorney, they submitted a claim for the loss to Allstate on July 28, 1989. A dispute then arose on August 3, 1989 regarding Allstate's request to take a sworn statement from the Bennetts as part of its investigation of the claim. Because Allstate allegedly refused to agree to conduct only one such interrogation, the Bennetts' attorney filed the complaint against Allstate and Miller in state court the next day, despite the fact that Allstate had not yet even denied coverage.[1] Although never served upon the defendants, on August 7, 1989 "courtesy copy" of the complaint was enclosed in a letter to Allstate from the Bennetts' attorney. That letter clearly indicated that the purpose of filing the complaint at that juncture was to garner the protection of the courts from "multiple, repetitious interrogations" of the insureds which, according to letter, had "become a pattern and practice of harassment, abuse and intimidation" within the insurance industry.

On April 23, 1990, Allstate finally determined that the loss was not within the scope of the Bennetts' homeowners policy. According to the Bennetts, Allstate's ground for denying coverage was that the subsidence damage must have been obvious for a period considerably prior to the claim for loss, thereby excusing Allstate's obligation to make payment under the policy endorsement specifically covering such loss. The Bennetts then served Allstate with a copy of the First Amended Complaint ("FAC") on May 17, 1990, prompting Allstate to remove the action to this court on June 15, 1990.

In the FAC, Miller is sued along with Allstate for the following causes of action:

1. breach of contract;

2. breach of the covenant of good faith and fair dealing;

3. fraud; and,

4. negligence.

The FAC makes no attempt to differentiate between the conduct of Miller and that of Allstate. Miller is simply identified as an agent for Allstate, who along with Allstate was conducting insurance business in California. (FAC, at ¶ 4). The FAC further avers that "[b]y virtue of their relationship to plaintiffs as insurers or agents thereof, said defendants are fiduciaries with respect to plaintiffs or owe fiduciary duties with respect to plaintiffs." (FAC, at ¶ 4). Later, the FAC claims that fiduciary duties were assumed by "defendants" when "they entered into the Homeowners Policy and accepted the premiums." (FAC, at ¶ 18). In the remainder of the complaint Miller is collectively identified along with Allstate as the "defendants."

Without question, Miller was the Allstate agent who sold the Bennetts their homeowners policies. However, as an Allstate insurance salesman, it is unrebutted that Miller did not participate in the drafting of the insurance contract nor was he involved with the investigation or determination of the Bennetts' loss claim.

As noted above, the FAC claims that Miller became a fiduciary of the Bennetts simply because he acted as their insurer, or agent of their insurer. The Bennetts now contend, however, that Miller's fiduciary duty is actually the function of a special relationship. Aside from acting as the Bennetts' Allstate insurance agent, Miller allegedly had also developed an enduring friendship with the Bennetts extending back before his tenure at Allstate. Miller allegedly visited socially with the Bennetts at their home on a few occasions during the period when subsidence damage existed. The gravamen of the Bennetts' claim against Miller now is that because he "held himself out as a long-time friend and cultivated the appearance of unyielding fidelity to the Bennetts" he became a fiduciary.

---

1. Although defendants were eventually served with a First Amended Complaint, both the initial and subsequent complaints named Allstate and Miller as defendants and the differences between that latter and former are not material to the issue at hand.

This purported fiduciary duty allegedly would have been breached "if Miller was aware of the damage which he had an opportunity to observe" while visiting the Bennetts socially given that he failed "to advise the Bennetts of this fact and of what measures they needed to take to protect their rights" under the policy.

## DISCUSSION

■ As defendants recognize, in order for the court to ignore Miller's residency for the purposes of jurisdiction they must demonstrate that it "is obvious according to settled law of the state" that plaintiffs have failed to state a cause of action against Miller. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987). Put another way, it must appear to "a near certainty" that joinder of Miller was fraudulent. *Lewis v. Time Inc.*, 83 F.R.D. 455, 466 (E.D.Cal.1979), *aff'd*, 710 F.2d 549 (9th Cir.1983). Having reviewed all submissions to the pending motion to remand, the court finds that Miller is not a legitimate party to this action.

### I. The Substantive Claims

■ The Supreme Court of California has unambiguously and succinctly rejected the notion, advanced here by the first two causes of action in the FAC against Miller, that insurance agents could be held liable for contractual breaches. In *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 824, 169 Cal.Rptr. 691, 620 P.2d 141 (1979), *cert. denied*, 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980), the court reversed individual judgments against insurance agents on the grounds that agents "are not parties to the insurance contract and not subject to the implied covenant [of good faith and fair dealing]."

■ Plaintiffs do not even contest, with good reason, Allstate's contention that there is no valid cause of action against Miller for either fraud or negligence. The alleged fraud, by the terms of the FAC, involved misrepresentations made in the policy. There is no specific allegation that Miller himself harbored any intent to deceive the Bennetts or that he personally made certain misrepresentations. Certainly the record before the court does not even remotely suggest facts supporting such a claim. Similarly, the claim for negligence relates exclusively to the investigation and processing of the Bennetts' loss claim, the renewing of their policy, and the drafting of the insurance contract itself. Once again, there is no allegation or outside facts to indicate Miller participated in these activities.[2] On the contrary, Miller's unrebutted declaration establishes convincingly that it was not his position to perform such functions.

Although it is obvious that none of the four stated causes of action against Miller are valid "according to the settled law of the state," *McCabe v. General Foods Corp.*, 811 F.2d at 1339, given the governing standards in this context and ease with which amendments to the pleading are made, the court has indulged the Bennetts' chief contention that Miller nonetheless is legitimately sued for his potential[3] breach of fiduciary duties. After careful review of the further briefings on this issue and its own independent investigation, the court finds that there are several settled reasons why this claim also fails.

Despite considerable opportunities to do so, the California Supreme Court has been unwilling to find the existence of fiduciary duty between insurers and insureds. *See e.g. Foley v. Interactive Data*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988); *Seamans Direct Buying Service Inc. v. Standard Oil*, 36 Cal.3d 752, 206 Cal.Rptr. 354, 686 P.2d 1158 (1984). On the other hand, every case to squarely address the issue has decided that indeed under California law no fiduciary duty is created between insurers and insureds. *Henry v.*

---

**2.** In fact, the FAC contradicts this claim as it applies to Miller because it actually identifies a Mr. Mel Smith as the Allstate agent responsible for processing their loss claim.

**3.** The court finds it necessary to characterize this claim as contingent in nature because it depends upon Miller having actually noticed the subsidence damage to the Bennetts home while entertained there as a social guest.

*Associated Indemnity*, 217 Cal.App.3d 1405, 1418–19, 266 Cal.Rptr. 578 (1990); *Hassard, Bonnington v. The Home Ins. Co.*, 740 F.Supp. 789 (S.D.Cal.1990); *Kanne v. Connecticut Life Ins. Co.*, 607 F.Supp. 899 (C.D.Cal.1985), *vacated in part on other grounds*, 859 F.2d 96 (9th Cir. 1988), *rehearing denied*, 867 F.2d 489 (1988) (*en banc*), *cert. denied*, —— U.S. ——, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989).

■ Even ignoring these decisions, there is the further difficulty in this case that the putative fiduciary is the insurer's agent. If Miller were held to be the Bennetts fiduciary, he would have to place their interests not only before his own, but before his employer as well. But such a scenario plainly runs afoul of the long-standing axiom, embraced in California, that an "agent may not compete with the principal, nor may he or she act as an agent for another whose interests conflict with those of the principal." *Sierra Pacific Ind. v. Carter*, 104 Cal.App.3d 579, 581, 163 Cal.Rptr. 764 (1980), *citing* Witkin, *Summary of California Law*, Vol. 1, 8th ed., pp. 705–706.

■ Finally, the court finds no merit in the Bennetts' argument that Miller became a fiduciary by cultivating the appearance of a long-time friendship and in whom they trusted and relied. The court rejected a similar claim in *Ampuero v. Luce*, 68 Cal. App.2d 811, 819, 157 P.2d 899 (1945), where an elderly man sued an attorney, "an intimate and lifelong friend [of his wife] who had helped her throughout her years," but who allegedly betrayed this relationship of trust by failing to carry out a condition the wife had attached to an earlier gift of property to the attorney. The court specifically held that the alleged "relationship of trust and confidence" did not qualify as a "confidential or fiduciary relation, as those terms are used in the authorities." *Id.* Following *Ampuero*, other courts have underscored that "[t]he mere placing of trust in another person does not create a fiduciary relationship." *Zumbrun v. Univ. of Southern California*, 25 Cal.App.3d 1, 13, 101 Cal.Rptr. 499 (1972). The Bennetts, who never pled or otherwise suggested a confidential relationship existed between Miller and themselves, and who instead base their fiduciary claim on their alleged friendship with Miller and reposing of trust in him, cannot meaningfully distinguish these cases.

In light of the above, the court finds it obvious according to settled law that no valid cause of action, pled or unpled, exists against Miller.

*II. Timeliness*

■ A separate objection of untimeliness has been raised to Allstate's removal. The removal statute, 28 U.S.C. § 1446(b) provides in pertinent part:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading....

Although there is no dispute that judged from the date the FAC was served upon Allstate, removal was timely, the Bennetts argue that the "through service or otherwise" language of § 1446(b) means that Allstate should have removed thirty days after receiving the courtesy copy of the initial unserved pleading. Both parties acknowledge that district courts have split on this question of whether receipt of a copy of the complaint suffices to start the time running under § 1446(b) before actual service is made. Allstate argues that the better rule answers that question in the negative in light of a careful and thorough review of the legislative intent behind the present incarnation of § 1446(b). *Love v. State Farm Mutual Auto Ins. Co.*, 542 F.Supp. 65, 66 (N.D.Ga.1982). The *Love* interpretation of the "or otherwise" language has been characterized as the "majority view" by *Thomason v. Republic Ins. Co.*, 630 F.Supp. 331, 334 (E.D.Cal.1986). A contrary result has been reached in *Tyler v. Prudential Ins. Co. of America*, 524 F.Supp. 1211, 1213 (W.D.Pa.1981), which was followed recently in *Uhles v. F.W. Woolworth Co.*, 715 F.Supp. 297 (C.D.Cal. 1989). Neither *Tyler* nor *Uhles*, however, analyzed the legislative history of § 1446(b) or weighed the practical consequences of

their decision. Particularly here, where the copy of the complaint was provided at a time when the controversy was manifestly unripe, the court finds the reasoning of *Love* persuasive. As a result, the court finds Allstate's removal of the action within thirty days after receipt of service of the complaint was timely.

### CONCLUSION

In accordance with the foregoing, the court hereby DENIES the Bennetts' motion to remand.

IT IS SO ORDERED.