### Larry S. BOWMAN and Mary M. Bowman, Plaintiffs,

v.

### WEEKS MARINE, INC., Defendant.

### Civ. A. No. 2:96–1426–18.

United States District Court, D. South Carolina, Charleston Division.

Aug. 21, 1996.

---

1. Plaintiffs note the approach suggested by the District of Columbia. *See Smith v. Haden,* 868 F.Supp. 1 (D.D.C.1994).

330

Mark A. Mason, Mt. Pleasant, SC, for plaintiffs.

Henry E. Grimball, Charleston, SC, for defendant.

## ORDER

NORTON, District Judge.

This action is before the court on Plaintiff's Rule 12(b) Motion to Dismiss for Lack of Personal Jurisdiction. Defendant has also filed a Motion to Remand. Having heard oral argument and reviewed the pre-motion and post-motion memoranda submitted by the parties, this court finds that service of process was not proper and therefore grants Defendant's Motion to Dismiss.

### I. BACKGROUND

This is a negligence case brought on January 8, 1996, by Plaintiffs Larry and Mary Bowman against Weeks Marine. Plaintiffs,

residents of Greenville County, South Carolina filed this case in state court alleging that Defendant's negligence in placing sand and pumping water in front of their Edisto Island beach house damaged the residence. Defendant is a corporation whose principal place of business is some state other than South Carolina and whose corporate headquarters is located in Cranford, New Jersey. On March 27, 1996, Plaintiffs' counsel mailed a summons and complaint to Defendant by certified mail, return receipt requested, with delivery restricted to Defendant addressee pursuant to state service of process rules. *See* S.C.R.Civ.P. 4(d)(8). The address on the return receipt was: "Mr. Richard N. Weeks, Weeks Marine, Inc., 216 North Avenue East, Cranford, New Jersey, 07016–2497." On or about April 1, 1996, Doris Huston, a receptionist at Defendant's corporate office, signed the receipt for the mailed summons and complaint. In her affidavit, she verifies that she signed for the letter, but states: "I am not a corporate officer of Weeks Marine, Inc., and I am not authorized to accept service of suit papers." Affidavit of Doris Huston ¶ 4. Additionally, Defendant presented an affidavit of Thomas F. Langan, the Corporate Risk Manager of Weeks Marine, who claims that he was unable to find any record of service on a corporate officer or the company's registered agent. Affidavit of Thomas F. Langan ¶ 3. He further states that Defendant has a registered agent for service of process in South Carolina. *Id.* ¶ 4. That agent, the Prentice Hall Corporation System, Inc., is also listed on the "Application By a Foreign Corporation for a Certificate of Authority to Transact Business in the State of South Carolina," which was apparently filed by Defendant with the State of South Carolina in June, 1995.

■ On May 13, 1996, Defendant filed a Notice of Removal and an Answer, reserving

its right to contest the personal jurisdiction of the federal court under its Motion to Dismiss for Lack of Personal Jurisdiction, which was filed simultaneously with its Answer and Notice of Removal. In its Motion to Dismiss, Defendant claims that service of process was improper pursuant to Rule 4 of the South Carolina Rules of Civil Procedure and therefore this court does not have personal jurisdiction over Defendant. On May 28, 1996, even though a Notice of Removal had been previously filed in state court, the state court entered an Order of Default finding Weeks Marine in default based on its failure to answer the state court summons and complaint.[1]

A hearing was held on this matter on June 4, 1996 at which time the court realized it had not received Plaintiff's Motion to Remand.[2] Although the court agreed to hear oral argument on both motions since they involved closely related issues, it took Defendant's Motion to Dismiss under advisement pending receipt and review of Plaintiffs' Motion to Remand and Memorandum in Support. On June 6, 1996, Plaintiffs filed a copy of the remand motion and supporting memorandum in which they claim that Defendant has failed to remove this lawsuit within the thirty days provided by 28 U.S.C. § 1446(b) in that Defendant received the summons and complaint by mail on April 1, 1996 and did not file the Notice of Removal until May 13.

## II. ANALYSIS

Before the court are Defendant's Motion to Dismiss and Plaintiffs' Motion to Remand. Plaintiffs argue that they complied with § 1446(b) while Defendant argues that there is no jurisdiction because service has not been perfected under the S.C.R.Civ.P.

---

1. This court is unsure on what jurisdictional basis the state court entered default subsequent to the Notice of Removal. Once a notice of removal is filed, the state court "shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d); *see Murray v. Ford Motor Co.,* 770 F.2d 461, 463 (5th Cir.1985). "Any further proceedings in the state court are coram non judice and will be vacated, even if the removal subsequently is found to have been im-

proper." 14A Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3737, at 551–52 (1985).

2. It was not determined whether this motion was not filed with the court or was misplaced by the Clerk's Office. However, on the date of the hearing, the Clerk's Office had no record of docketing this motion nor could Plaintiff locate a file stamped copy.

4(d)(8).[3] In their cursory memoranda and at oral argument, both parties focused primarily on whether the technicalities of the state law providing service by registered mail had been met. Neither party adequately presented the court with the legal analysis on which it ultimately relies.

The relevant part of the removal statute, 28 U.S.C. § 1446(b), states:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, **through service or otherwise,** of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based....

28 U.S.C. § 1446(b) (emphasis added). In addition to arguing that they have complied with state law, Plaintiffs contend that service to the receptionist at Defendant's corporate office, even if not in strict compliance with the state statute, complied with § 1446(b) in that it equated to receipt by Defendant "through service **or otherwise.**" Plaintiffs in their short two page memorandum in support, cite to no authority for this proposition nor does Defendant present the court with any counter argument on point. If Plaintiffs are correct, removal even without proper service was untimely. On the other hand, if Defendant is correct, failure to achieve proper service on the corporate Defendant is fatal because the court lacks personal jurisdiction over Defendant.

The interpretation of the meaning of the phrase "or otherwise" in § 1446(b) is the subject of much debate. *See Kluksdahl v. Muro Pharmaceutical, Inc.*, 886 F.Supp. 535, 537–38 (E.D.Va.1995). Concerning the two lines of reasoning that have developed in interpreting the "or otherwise" language, the *Kluksdahl* court noted:

Federal courts have developed two rules to determine the commencement of the thirty-day period provided for removal in 28 U.S.C. § 1446(b). The "receipt rule" requires that a defendant must remove a state action to federal court within thirty days of receipt of a copy of the initial pleading, without regard to whether service has been effected. *Shoemaker v. GAF Corp.*, 814 F.Supp. 495, 498 (W.D.Va. 1993). Under the "proper service" rule, "the thirty-day removal period commences only upon proper service of the defendant." *Id.* at 497. The Court of Appeals in this circuit has not decided the issue.

The receipt rule has been accepted by an increasing majority of federal courts, and it represents the modern trend.... Only two appellate decisions exist concerning the conflicting rules, both decided recently, and each adopted the receipt rule. *Roe v. O'Donohue*, 38 F.3d 298, 304 (7th Cir.1994) (holding that "the 30 days commences when the defendant, or its authorized agent, comes into possession of a copy of the complaint whether or not the delivery complies with the requirements of 'service'"); *Tech Hills II Associates v. Phoenix Home Life Mutual Insurance Co.*, 5 F.3d 963, 968 (6th Cir.1993) (holding that the thirty days commence "when the defendant has in fact received a copy of the initial pleading that sets forth the removable claim"). Both courts of appeals concluded that there was no escape from the plain statutory language. In *Roe*, for example, the Seventh Circuit observed that the courts adopting the receipt rule were holding "that § 1446(b) means what it says." *Roe*, 38 F.3d at 303. "Like the judges who decided *Tech Hills*," the *Roe*

---

3. This Rule states:

> **Service by Certified Mail.** Service of a summons and complaint upon a[n] ... [individual, corporation, or partnership] ... may be made by the plaintiff or by any person authorized to serve process pursuant to Rule 4(c), including a sheriff or his deputy, by registered or certified mail, return receipt requested and delivery restricted to the addressee. Service is effective upon the date of delivery as shown on the return receipt. Service pursuant to this paragraph shall not be the basis for the entry of a default or a judgment by default unless the record contains a return receipt showing the acceptance by the defendant. **Any such default or judgment by default shall be set aside pursuant to Rule 55(c) or Rule 60(b) if the defendant demonstrates to the court that the return receipt was signed by an unauthorized person.** If delivery of the process is refused or is returned undelivered, service shall be made as otherwise provided by these rules.

S.C.R.Civ. 4(d)(8) (Law.Co-op.1976) (emphasis added).

court "[saw] no escape from the language of the statute."

*Id.* at 537–38 (footnotes omitted). Recent district court cases in the Fourth Circuit have shown a trend towards adoption of the receipt rule. *See id.* at 539; *Shoemaker v. GAF Corp.*, 814 F.Supp. 495 (W.D.Va.1993); *Schwartz Bros., Inc. v. Striped Horse Records*, 745 F.Supp. 338 (D.Md.1990).

This court has reviewed the multitude of cases, which over the past forty years[4] have debated the advantages and disadvantages of both the "receipt rule" and the "proper service" rule, and hereby joins what may appear to be the minority position by adopting the proper service rule. At one time the majority view, the proper service rule apparently has its origins in a 1982 case, *Love v. State Farm Mut. Automobile Ins. Co.*, 542 F.Supp. 65, 67 (N.D.Ga.1982). *See Apache Nitrogen Prods., Inc. v. Harbor Ins. Co.*, 145 F.R.D. 674 (D.Ariz.1993). The current majority view, the receipt rule, is commonly traced to a 1981 case, *Tyler v. Prudential Ins. Co. of America*, 524 F.Supp. 1211, 1213 (W.D.Pa. 1981). *See Spielman v. Standard Ins. Co.*, 932 F.Supp. 246, 247–48 (N.D.Cal.1996). *But see Bullard v. American Airlines*, 929 F.Supp. 1284 (W.D.Mo.1996) (adopting the proper service rule). Because of the due process problems inherent with the receipt rule in addition to the widespread confusion which it creates, this court believes that the proper service rule is the more sound approach. It provides all litigants, in addition to the court, with a bright line test by which to measure the commencement of a defendant's removal period, and is for many reasons the better approach to determine the triggering event for the § 1446(b) thirty-day removal period.

## A. The Recent Circuit Court of Appeals' Cases Adopting the Receipt Rule.

As noted by the *Kluksdahl* court, both the Seventh Circuit Court of Appeals and the Sixth Circuit Court of Appeals have adopted the receipt rule. *See Kluksdahl*, 886 F.Supp. at 537–38 (discussing *Roe v. O'Donohue*, 38 F.3d 298, 303 (7th Cir.1994) and *Tech Hills II Assocs. v. Phoenix Home Life Mut. Ins. Co.*, 5 F.3d 963, 968 (6th Cir.1993)). In *Tech Hills* the Sixth Circuit addressed whether the receipt of a complaint by a security guard at defendant's corporate office building on a Saturday when the office was closed was sufficient receipt to commence the removal period. *Tech Hills*, 5 F.3d at 966. After looking to the line of cases following *Love*'s proper service rule, the court found several reasons to adopt the receipt rule. First, the court recognized that many cases adopting the receipt rule relied on an "alternative interpretation" of the legislative history than that in *Love*. The court noted:

> Earlier cases adopting the receipt rule based their position on a different interpretation of the legislative history of section 1446(b): The purpose of the 1949 amendment was to promote national uniformity in the triggering of the removal period by relying on receipt of the initial pleading instead of formal service of process, which varied from state to state.

*Id.* at 967 (citing *Tyler*, 524 F.Supp. at 1213). The court stated that the " '[a]lthough the legislative history relied upon by *Love* and its progeny clearly indicates one motivating factor in the decision to amend § 1446(b), it is silent on the issue of whether formal service is necessary to trigger the running of the removal period.'" *Id.* at 968 (quoting *Pillin's Place, Inc. v. Bank One*, 771 F.Supp. 205, 207 (N.D.Ohio 1991)). The court later concluded that "the legislative history does not lead to the conclusion that the rule is 'demonstrably at odds' with Congress' intent in amending section 1446(b)." *Id.* at 968 (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989)).[5] The court recog-

---

4. *See* Donna Rohwer, Comment, *The Forty–Year Dispute: What Triggers the Start of the Removal Period Under 28 U.S.C. Section 1446(B)?*, 61 U.Mo. (Kan.City) L.Rev. 359, Winter 1992. This Comment, which supports the proper service rule, provides an excellent discussion of the historical development of the two rules.

5. On this issue, the 1993 *Shoemaker* case from the Western District of Virginia recognized:

> [E]ven when the legislative history is examined, the "receipt rule" is not inconsistent with congressional intent. While the legislative history may lend some support to the "proper service rule," that same legislative history indi-

nized that the alternative legislative history argument might not be very sound and in fact had some weaknesses. *See id.* at 968 & n. 2 (citing *Conticommodity Servs., Inc. v. Perl*, 663 F.Supp. 27, 30 (N.D.Ill.1987)).

The second basis relied on in *Tech Hills* for adopting the receipt rule was the court's application of "overriding principles of statutory interpretation." *Id.* at 968. The court stated that the *Love* interpretation violated the basic premise of statutory construction that the plain meaning of a statute should be conclusive,[6] except in rare cases in which the " 'literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.' " *Id.* at 968 (quoting *Ron Pair Enters., Inc.*, 489 U.S. at 242, 109 S.Ct. at 1031). Finally, the court noted that the receipt rule was "consistent with the longstanding principle that the removal statutes are to be construed strictly, narrowly and against removal." *Id.* at 968 (citing *Kerr v. Holland America–Line Westours*, 794 F.Supp. 207, 212–13 (E.D.Mich.1992)).

Having adopted the receipt rule, the Sixth Circuit held that receipt by a security guard, who was "not authorized to receive service," at the defendant's place of business on Saturday was not receipt under the removal statute. *Id.* at 968. Instead, the court held that actual receipt occurred two days later when the complaint was received by an authorized representative of the defendant corporation. *Id.* Ironically, in *Tech Hills*, the receipt rule issue was resolved by looking to who was authorized to receive service for the corporation—an analysis not too different from the proper service rule.[7]

In *Roe v. O'Donohue*, the Seventh Circuit looked to *Tech Hills* and also adopted the receipt rule. *Roe*, 38 F.3d at 303. The issue in *Roe* was whether receipt of a summons and complaint by a receptionist at the defendant's corporate office was sufficient to commence the removal period. *Id.* at 300. Although the pleadings were properly forwarded to the appropriate corporate person, he received the summons and complaint three days after their receipt by the receptionist. The corporation's notice of removal was untimely if based on the date the receptionist received the pleadings, but timely if based on the later date. *Id.* at 302. The Seventh Circuit ultimately adopted the receipt rule based primarily on a strict adherence to the express language of the statute. The court noted several instances in which "receipt" did not equate to "service" and stated:

> Like the judges who decided *Tech Hills*, we see no escape from the language of the statute. Some district courts have emphasized that the legislative history of the 1949 amendment does not contain a clear statement that "or otherwise" covers the situations to which we referred above, but courts are not authorized to disregard express language just because the legislative

---

cates neither that formal service is required to trigger the running of the removal period nor that formal service is irrelevant. Thus, as to the particular issue at bar, the legislative history is ambiguous.
*Shoemaker*, 814 F.Supp. at 498.

**6.** The *Shoemaker* case goes as far as saying that the statute is unambiguous and therefore there is no reason to even resort to the legislative intent. 814 F.Supp. at 498. It is difficult to understand how a court can claim the statute is unambiguous while simultaneously recognizing the proliferation of reported cases on its meaning. *See id.* at 497–98 & nn. 4–5; *Marion Corp. v. Lloyds Bank, PLC*, 738 F.Supp. 1377, 1379 (S.D.Ala. 1990) ("Here, however, the words 'or otherwise' are so vague as to have no meaning. Receipt of a complaint through service 'or otherwise' taken to its literal conclusion could mean that any

receipt of a complaint is sufficient to start the removal time period running.").

**7.** Frequently, courts resort to looking to who is authorized to receive process in determining when the defendant has received the pleading under the receipt rule. In *Tech Hills* the court stated: "As a general rule, a complaint is considered received by a corporation when it is received by an agent authorized to accept service of process." 5 F.3d at 968 (citing *Pochiro v. Prudential Ins. Co.*, 827 F.2d 1246, 1248 (9th Cir.1987)); *Spielman*, 932 F.Supp. at 248–49 (courier had no authorization to receive service of process therefore his acceptance was not receipt by the defendant); *cf.* 14A Charles E. Wright, et al., *Federal Practice and Procedure* § 3732, at 516 ("[I]t is now well settled that the time for seeking removal begins to run only when the defendant or an agent in fact receives the process.").

history does not echo "and we really mean it!"

*Id.* at 303 (citing *Pittston Coal Group v. Sebben,* 488 U.S. 105, 115, 109 S.Ct. 414, 420–21, 102 L.Ed.2d 408 (1988)). The *Roe* court also noted that use of the receipt rule "expedites the identification of the proper court" thereby preventing a defendant from abusing the process.

A defendant cannot string things out by refusing to accept mail delivery, waiting for service in hand, and then waiting another 30 days to remove. Once the defendant possesses a copy of the complaint, it must decide promptly in which court it wants to proceed. Indeed, the time may start even earlier: some courts have held that the 30 days runs from the *first* defendant's receipt of the complaint, *compare Getty Oil,* 841 F.2d at 1262–63 *with McKinney v. Maryland [sic] Community College,* 955 F.2d 924, 926–28 (4th Cir. 1992),[8] but we need not decide today whether this is correct.

*Id.* at 303. *Roe* concluded by stating:

Marginal cases that would put this language under stress (and hold it up to a charge of absurdity) are not hard to imagine: consider, for example, what happens if the plaintiff sends the defendant a courtesy copy of the complaint before filing, and thus before removal is possible. Our case poses no similar challenge to a literal reading, and we set this pitfall aside for consideration on a rainy day. **Whatever (slight) ambiguity § 1446(b) poses in application to an ordinary case, such as ours, may be resolved by the principle that doubts should be resolved against removal. Any other conclusion drains the words "or otherwise" of meaning, a step we are loath to take.** Accordingly, we hold that the 30 days commences when the defendant, or its **authorized** agent, comes into possession of a copy of the complaint whether or not the delivery complies with the requirements of "service".

8. The majority rule appears to be that receipt by the first defendant commences the thirty day period by which all subsequently joined defendants must remove under 28 U.S.C. § 1446(b).

*Id.* at 303–04 (emphasis added) (citations omitted) (citing Robert P. Faulkner, *The Courtesy Copy Trap: Untimely Removal from State to Federal Court,* 52 Md.L.Rev. 374 (1993) and *Shamrock Oil & Gas Co. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 871–72, 85 L.Ed. 1214 (1941)). Therefore, relying heavily on the plain meaning of the statutory language, the Seventh Circuit adopted the receipt rule and refused to take a loathful step that would disregard the plain meaning of the "or otherwise" language as it appeared in § 1446(b).

Having adopted the receipt rule, thirteen months after *Roe* the Seventh Circuit Court of Appeals was faced with a more difficult issue in *Silva v. City of Madison,* 69 F.3d 1368 (7th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1354, 134 L.Ed.2d 522 (1996). That case involved the interaction of Fed. R.Civ.P. 81(c) and 28 U.S.C. § 1446(b). In *Silva,* after receipt of a copy of the complaint, the defendant City removed the case to federal court without having been served, but did not answer the complaint. When the City failed to answer the complaint, Silva then made a motion for default judgment for the City's failure to timely answer or otherwise plead as required under Fed.R.Civ.P. 81. The district court denied the default motion and then Silva properly served the City. *Id.* at 1370.

The Seventh Circuit had to try to harmonize the "service or otherwise" language contained in Fed.R.Civ.P. 81(c) with identical language contained in 28 U.S.C. § 1446(b). Rule 81(c) provides for three distinct time periods whereby a defendant must file a responsive pleading in a removed case if the defendant has not yet done so. It states:

In a removed action in which the defendant has not answered, the defendant shall answer or present the other defenses or objections available under these rules within 20 days **after the receipt through service or otherwise of a copy of the initial pleading setting forth the claim for relief upon which the action or proceeding is based,** or within 20 days after the ser-

However, as discussed in further detail *infra,* the Fourth Circuit Court of Appeals expressly rejected this interpretation in the *McKinney* case cited here by *Roe. McKinney,* 955 F.2d at 926–27.

vice of summons upon such initial pleading, then filed, or within 5 days after the filing of the petition for removal, whichever period is longest.

Fed.R.Civ.P. 81(c) (emphasis added). After analyzing the historical changes in the wording of Rule 81(c) and how those changes interacted with similar changes in § 1446(b), the court recognized that "although the plain language of Rule 81(c) can be read to apply all three time periods set forth in the Rule to all removal cases, the interpretation is not compatible with the intent of the drafters of either § 1446 or of Rule 81." *Id.* at 1375. Therefore, the court determined that the second of these three periods specified in the Rule "was not intended to apply in a state in which, when service is effected, the complaint is served along with the summons." *Id.* at 1375 (citing *Savarese v. Edrick Transfer & Storage, Inc.*, 513 F.2d 140, 143 (9th Cir. 1975)). Because the state law at issue in *Silva* required delivery of the complaint upon service of process, the court decided that only the first and the third time periods provided for in Rule 81(c) applied. *Id.* at 1372, 1375. Therefore, the defendant "City was required to file a responsive pleading within the later of twenty days after receipt of the complaint 'through service or otherwise' or five days after removal." *Id.* at 1375.

Having narrowed the application of Rule 81(c), the court now faced the additional issue of "whether Rule 81(c)'s language requiring a responsive pleading within twenty days after receipt of the complaint 'through service or otherwise' is operative if the defendant has not been properly served." *Id.* at 1375. The court recognized that if Rule 81(c) was read in a vacuum in light of its *Roe* decision, such a reading could pose a problem for defendants.

Because receipt of the complaint triggers the removal period under § 1446(b) and also triggers the time period within which a responsive pleading must be filed under Rule 81(c), a defendant could be required to remove an action to federal court and to file a responsive pleading before proper service is effected.

*Id.* at 1375. The court discussed *Roe* and stated that the purpose of the amendments to § 1446(b) were to treat litigants in states with different service rules in an "evenhanded manner by requiring that the decision to remove be made within a short period after the defendant had the complaint...." *Id.* at 1375. According to the court, such requirement puts all litigants on an "equal playing field" and also "expedites the decisionmaking process with respect to the most fundamental of questions, the forum that will adjudicate the case." *Id.* at 1375–76 (citing *Roe*, 38 F.3d at 302).

The *Silva* court answered this dilemma by holding that the time period in Rule 81(c) requiring a responsive pleading within twenty days after receipt of the complaint "through service or otherwise" is not applicable if the defendant has not been properly served. *Id.* at 1376. In other words, while staunchly maintaining that the receipt rule under *Roe* is the proper rule to apply under the "plain language" of § 1446(b), ("courts are not authorized to disregard express language just because the legislative history does not echo 'and we really mean it!' " *Roe*, 38 F.3d at 303), the *Silva* court disregards the same language and instead adopts what is in effect a proper service rule for the application of Rule 81(c). The court explains in detail its position as follows:

In stark contrast, we perceive nothing in the statute, the rule or their respective legislative histories that would justify our concluding that the drafters, in their quest for evenhandedness and promptness in the removal process, intended to abrogate the necessity for something as fundamental as service of process. It simply is not reasonable for us to conclude that it was intended that such a major exception to the clear mandates of Rules 4 and 12 be undertaken without any express mention of such a consequence. It is one thing to require removal before proper service is effected; it is quite another to require a party to file a responsive pleading. Requiring a responsive pleading before service is effected is at odds with a fundamental principle of federal procedure—that a responsive pleading is required only after service has been effected and the party has been made

subject to the jurisdiction of the federal courts. Fed.R.Civ.P. 12(a)(1)(A).... *Mid–Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297 (7th Cir.1991) ("This court has long held that valid service of process is necessary in order to assert personal jurisdiction over a defendant. Moreover, it is well recognized that a 'defendant's actual notice of the litigation ... is insufficient to satisfy Rule 4's requirements.'") (quoting *Way v. Mueller Brass Co.*, 840 F.2d 303, 306 (5th Cir.1988)).... As the court stated in *Apache Nitrogen Prods., Inc. v. Harbor Ins. Co.*, 145 F.R.D. 674 (D.Ariz.1993),[9] "[w]hile it is conceivable that Congress might wish to establish a different standard, outside the boundaries of Rule 12, to govern response time in removed actions ...[,] [i]t is unimaginable ... that such a significant alteration in the Federal Rules of Civil Procedure would be effected without mention by the Advisory Committee, the Supreme Court, or Congress itself." *Apache*, 145 F.R.D. at 680. A responsive pleading is the defendant's opportunity to state his objections to jurisdiction or to state his substantive position. Before these matters are properly before a court, there must be an appropriate notification of the assertion of jurisdiction. A defendant must be apprised of the pendency of the action, " '[a]n elementary and fundamental requirement of due process....'" *Peralta v. Heights Medical Ctr., Inc.*, 485 U.S. 80, 84, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). Without service, there is no personal jurisdiction over the defendant. This right is not waived by filing a petition for removal to federal court....

. . . .

Section 1446(b) ensures that the defendant have a copy of the complaint before making a decision as to whether the matter is appropriate for the federal forum. The service of process rules require that the defendant formally be made a party to the lawsuit before he is required to litigate the matter of jurisdiction.

*Id.* at 1376–77. With all due respect to the Seventh Circuit, it appears that its analysis of Rule 81(c) and the position advocated by *Silva* are at odds and quite inconsistent with its analysis and conclusion in *Roe* concerning the application of § 1446(b). Additionally, this result will more likely than not lead to further confusion with respect to the application of § 1446(b) and Rule 81(c). Courts that adopt the receipt rule for § 1446(b) must recognize the ramifications of how such an application of § 1446(b) interacts with the requirements of Rule 81(c). As recognized in *Silva*, requiring a defendant to answer or plead under Rule 81(c) without having been properly served is an absurdity. On the other hand courts adopting the proper service rule do not face this issue because application of the proper service rule under § 1446(b) results in no difficulty in applying Rule 81(c).

The issue facing the Seventh Circuit in *Silva* was addressed three years earlier in *Apache Nitrogen Prods. v. Harbor Ins. Co.*, 145 F.R.D. 674 (D.Ariz.1993).[10] There the court recognized that the language in Rule 81(c) and § 1446(b) was identical and concluded that the only logical approach was to adopt and consistently apply the proper service rule under *Love* to both Rule 81(c) and § 1446(b). Ironically, the *Apache* case, which is one of the most well-reasoned cases adopting the proper service rule, is relied upon and quoted above by *Silva* even though *Apache* reaches the opposite conclusion of the Seventh Circuit in *Roe* with respect to § 1466(b). In fact, *Apache* criticizes the arguments made by proponents of the receipt rule. *Id.* at 680. First, *Apache* rejects the argument that the receipt rule would provide for more uniformity than the proper service rule. "While very little in life is truly certain, it seems safe to say that a standard

---

**9.** As discussed *infra*, *Apache* is one of the leading cases rejecting the receipt rule.

**10.** *Apache* and *Silva* appear to be the first two reported cases to address the interaction of § 1446(b) with Rule 81(c). Another recent case, *Carter v. Building Material & Constr. Teamsters' Union Local 216*, 928 F.Supp. 997 (N.D.Cal. 1996), has addressed the issue by adopting the receipt rule and the *Silva* analysis of Rule 81(c).

which requires formal service of process promotes certainty far more effectively than one which accepts receipt 'otherwise' as its sole criteria." *Id.* at 679. Second, *Apache* discounts the notion that there is any clear meaning, let alone plain meaning, to the "service or otherwise" language of § 1446(b).

> [I]f in fact the words "service or otherwise" had a plain meaning, the cases would not be so hopelessly split over their proper interpretation.... Nevertheless, over the centuries courts have developed a variety of interpretive tools to use in resolving the ambiguities that necessarily attach when written laws must be translated into legal decisions. The reliance of courts and litigants on claimed "plain meaning" usually represents a conscious disregard of evidence that would lead to an undesired result, and not the existence of true ambiguity. To translate the words "service of otherwise" into terms of meaning requires looking to all available interpretive tools, and not simply relying on the false idol of "plain meaning."

*Id.* at 679 (citations omitted). Finally, the *Apache* court contends that the oft repeated precept that "when in doubt, removal should be strictly construed against the defendant," which originates from language in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941), has been expanded to an overbroad premise that any questionable removal must be decided against the defendant. After referring to the language in *Shamrock Oil* from which this "principle" has emanated, the *Apache* court states:

> Stated more precisely, then, the dictum that removal jurisdiction must be strictly construed actually means that in the context of removal, a federal court must not expand its jurisdiction beyond the precise limitations set by Congress. There is a fine but distinct line between this principle and the approach followed by courts adopting the *Tyler* [receipt] rule, which boils down to the assertion that federal courts should do everything in their power to defeat defendants' efforts to remove, regardless of Congress' actual intent.

*Id.* at 680. Finally, the court notes that adoption of the receipt rule under § 1446(b) results in a harmonious application of Rule 81(c) and is a more structurally sound approach when considered in light of several other federal rules of civil procedure. *Id.* at 680.[11] After considering *Tech Hills, Roe,* and *Silva,* this court finds the reasoning and result reached by Judge Bilby in *Apache* to be the most logical in light of many other problems with the receipt rule.

## B. The Problems with the Receipt Rule

In the Fourth Circuit, it appears that recently most district courts faced with this issue have adopted the receipt rule. *See, e.g., Kluksdahl,* 886 F.Supp. at 539; *Shoemaker,* 814 F.Supp. at 499. As already discussed, adoption of the receipt rule under § 1446(b) leads to inconsistencies when considering the same language if Rule 81(c). Another problem inherent to the receipt rule is that the court is often required to undertake an analysis of the semantics of the statutory language in order to reach a conclusion. Although some courts claim that the receipt rule will lead to greater uniformity in the application of 28 U.S.C. § 1446(b), *see Tech Hills,* 5 F.3d at 967, this does not appear to be the case as courts across the nation grapple with not only defining the words "receipt," "or otherwise," but also with determining what constitutes a "copy of the initial pleading" for the purposes of § 1446(b). As stated in *Estate of Baratt v. Phoenix Mut. Life Ins. Co.,* 787 F.Supp. 333 (W.D.N.Y.1992),

> [T]his court rejects the notion that reliance on receipt instead of proper service would result in a greater degree of uniformity in the federal system. First, I note that it would do so at the expense of state service rules which are in place to assure that the defendant receives notice sufficient to satisfy notions of due process and fair play. Second, it would essentially reward plaintiffs for effecting improper service. The "or otherwise" language of section 1446(b) was not intended to permit a plaintiff to substitute informal or improper service for the traditional requirements of personal

11. *See supra* note 5, Rohwer, *The Forty Year Dispute,* 61 U.Mo.L.Rev. at 370–73.

service. Finally, and perhaps most importantly, it would not provide the clearest rule. Collateral litigation would surely result from arguments over whether the defendant "actually or constructively," received papers which were improperly served. The simplest and fairest route is to hold that the removal period is not triggered until there has been proper service.

*Id.* at 337 (citations omitted).

For example, in interpreting "receipt ... or otherwise", a court is potentially faced with the following questions: (1) What is receipt?, (2) Is receipt by a facsimile valid? *See Bell v. Marmaras Navigation, Ltd.,* No. CIV. A. 96–1042, 1996 WL 328778 (E.D.La. June 13, 1996) (addressing the difficulty of proving receipt by fax) (unreported decision available on Westlaw); *Spreeman v. HealthSouth Corp.,* No. 95–1366, 1996 WL 129814 (D.Kan. Feb. 27, 1996) (defendant claiming never to have received fax copy while plaintiff presents a fax slip indicating fax was successfully transmitted) (unreported decision available on Westlaw), (3) Does receipt by e-mail constitute receipt?, (4) Who is authorized to receive for a corporation, an agency, a partnership?, (5) How do defendants, who have the burden of proving removal was justified, disprove the negative that they did not receive a copy of the initial pleading? *See Goodyear Tire & Rubber Co. v. Fuji Photo Film Co.,* 645 F.Supp. 37, 39 (S.D.Fla.1986) ("Nevertheless, it demonstrates the onerous burden on a defendant who must show that he did *not* receive a copy of the complaint prior to service of it upon him when challenged by a plaintiff seeking remand."), (6) Can an attorney who has represented a client in the past receive for the client if the client later decides to once again retain the same counsel? *Cf. Perkins v. Mari Trend, Inc.,* No. CIV. A. 96–941, 1996 WL 277613 (E.D.La. May 21, 1996) (courtesy copy mailed to attorney who previously represented defendant, but who was not authorized to accept service for defendant) (unreported decision available on Westlaw), (7) Does a certified copy of a summons and complaint received by insurance carrier, but not the insured, constitute receipt?, (8) Is there such a thing as constructive, as op-

posed to actual, receipt? *See generally,* Jean F. Rydstrom, *When Period for Filing Petition for Removal of Civil Action From State Court to Federal District Court Begins to Run Under 28 USCS § 1446(b),* 16 A.L.R.Fed. 287 (1973 & Supp.1995).

In attempting to apply the receipt rule, a court is must also face another can of worms to determine what constitutes a "copy of the initial pleading." *See Love,* 542 F.Supp. at 67 & 68 n. 5. For example, (1) Is a conformed copy of a complaint an initial pleading?, (2) Is an unconformed courtesy copy of the complaint an initial pleading? *See Zatarain v. WDSU–TV,* Civ. A. No. 93–526, 1993 WL 98681 (E.D.La. Mar. 26, 1993) (unreported decision available on Westlaw), (3) Are draft pleadings, sample pleadings or courtesy copies of proposed pleadings, which are mailed, faxed or e-mailed to a defendant, but which have not yet been filed in state court, initial pleadings? *See Bennett v. Allstate Ins. Co.,* 753 F.Supp. 299, 303 (N.D.Cal.1990), (4) Is a summons without a complaint an initial pleading?, (5) Is a complaint that has not been filed, but is accompanied by a letter in which the plaintiff's attorney states she will be filing the case in the immediate future (tomorrow, next week, next month) an initial pleading?, (6) When does the period commence if a conformed complaint is faxed to a secretary at a corporation, who five days later delivers it to her boss, who is a senior manager, but who is not authorized to receive service for the corporation, and the plaintiff later joins additional defendants? *See generally,* Robert F. Koets, *What Constitutes "Initial Pleading" for Purposes of Computing Time for Removal of Civil Action from State to Federal Court Under 28 USCS § 1446(b),* 130 A.L.R.Fed. 581 (1996). These are just a few of the many questions which might result when a court attempts to apply the receipt rule. Ultimately, many of these questions are answered by looking to state service of process laws. Use of the proper service rule results in no such confusion.

The inequity of the receipt rule is further demonstrated by the fact that defendants may have to make removal decisions within 30 days of receiving a courtesy copy and

demand letter even if plaintiff is attempting to resolve the matter without proceeding further with service on the defendant. This provides a trap for the unwary or trusting defendant. For example, in *Valle Trade, Inc. v. Plastic Specialties & Technologies, Inc.*, 880 F.Supp. 499 (S.D.Tex.1995), plaintiff filed a petition in state court on November 3, 1994 and simultaneously mailed a "courtesy copy" to defendant along with a demand letter which stated that service would be requested if defendant did not agree to pay $120,000. *Id.* at 499. Defendant received the letter on November 14, 1994 and forwarded it to legal counsel so that an appropriate response could be drafted. Defendant ultimately denied any wrongdoing and on January 3, 1995, plaintiff properly served defendant. On January 20, 1995, defendant removed the case to federal court. Plaintiff filed a motion to remand claiming the removal was untimely because the thirty day period began upon receipt of the November 14 courtesy copy. Agreeing with plaintiff, the court held that the fact that defendant was evaluating settlement proposals and had not been served did not preclude the commencement of the removal period on receipt of the courtesy copy. *Id.* at 500.

The circumstances in *Valle Trade,* adopting the receipt rule, are not too far removed from the facts in *Love.* There, on the same day plaintiffs filed the complaint in state court, they mailed defendant State Farm a nonconformed copy of the complaint which bore no date nor docket number nor any indication whatsoever that it had been filed. *Love,* 542 F.Supp. at 66. The nonconformed complaint was simply accompanied by the following short letter stating:

> Enclosed is a copy of a complaint which has been filed in the Superior Court of Henry County. I have advised the marshal not to effectuate service on State Farm. I am hopeful that we can resolve this claim without any further litigation.

*Id.* at 66. In *Love,* adoption of the receipt rule would have defeated any removal because defendant did not ultimately remove until two months after receipt of the courtesy copy. *Id.* at 67. After looking to the statute's legislative history, the *Love* court rejected the receipt rule. *Id.* at 67–68. Clearly the more equitable result is reached with the proper service rule, a rule this court adopts as the best approach to resolve this issue.

Service of process is a bright line test which traditionally has been the foundation for commencement of an action and which provides the defendant the requisite due process notice that the action has commenced. None of the questions posed above result if the court adopts the proper service rule because it clearly and succinctly defines the commencement of the removal period thereby dispelling any confusion among the parties and the court. A federal court applying the proper service rule generally has a well-defined body of state law which delineates exactly what is "service of process" under the applicable state statute. Under the *Erie* doctrine, a federal court can easily look to state statutes and case law and readily determine the triggering event commencing the thirty-day removal period. Therefore, this court agrees with the conclusion of *Apache* that a much more uniform and logical approach would be for federal courts to rely on this established body of law instead of having to continually re-invent the wheel by attempting to define the not so plain and unambiguous "or otherwise" language of § 1446(b).

Yet another problem with adoption of the receipt rule is, as noted by *Love,* that the legislative history is much more supportive of the proper service rule. As explained in *Love:*

> Prior to 1948, a removal petition was in essence a state court responsive pleading; it was filed in that court within the time permitted to answer a complaint as established by the state's rules of civil practice. In 1948, in an attempt to make the removal procedure more uniform, Congress revised section 1446(b) to provide that the removal petition be filed in federal court "within twenty days after commencement of the action or service of process, whichever is later." Under this formulation, of course, the removal period could not begin until service of process had been obtained. A problem arose, however, in those states

such as New York which permitted a plaintiff to commence a suit without serving or filing a complaint, merely by serving the defendant with a summons. Under the 1948 version of section 1446(b), in such cases the removal period could expire before a defendant received a copy of the complaint, thus depriving him of an opportunity to remove the action. It was in response to this problem that Congress revised section 1446(b) to permit removal "within twenty [now thirty] days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading." Thus, the "through service or otherwise" language was intended to expand the removal period in states following the New York Rule. It was not intended to diminish the right to removal, by permitting a plaintiff to circumvent the already existing requirement of personal service through informal service. The Court concludes that the removal period set forth in 28 U.S.C. § 1446(b) cannot commence until a plaintiff properly serves defendant with process.

*Love,* 542 F.Supp. at 67–68 (citations omitted); *see Marion Corp. v. Lloyds Bank, PLC,* 738 F.Supp. 1377, 1379 (S.D.Ala.1990). In fact, some courts that reject the proper service rule almost simultaneously concede that the alternative legislative history argument made by proponents of the receipt rule "may be misplaced." *See Apache,* 145 F.R.D. at 679 (citing *Pic–Mount Corp. v. Stoffel Seals Corp.,* 708 F.Supp. 1113, 1117–18 (D.Nev.1989)); *Conticommodity,* 663 F.Supp. at 30. Other courts, like the Sixth Circuit in *Tech Hills,* circumvent the legislative history and adopt the receipt rule by claiming that the rule is not "demonstrably at odds" with the legislative history because the legislative history is " 'silent on the issue of whether formal service is necessary to trigger the running of the removal period.' " *Tech Hills,* 5 F.3d at 968 (quoting *Pillin's Place,* 771 F.Supp. at 207). Finally, although the Seventh Circuit gave little credence to § 1446(b)'s legislative history in its 1994 *Roe* opinion, *see Roe,* 38 F.3d at 303, it resorts to a rather extensive "thumbnail sketch" of the legislative history of both Rule 81(c) and § 1446(b) in its 1995 *Silva* decision. *Silva,*

69 F.3d at 1372–74. In fact, some of the Seventh Circuit's discussion of the legislative history of § 1446(b) in *Silva* mirrors that in *Love.* Compare *Silva,* 69 F.3d at 1374, with *Love,* 542 F.Supp. at 68.

This court further believes that a true level playing field can only be provided by the proper service rule because the receipt rule allows the race to federal court to begin when some runners may not even be notified to take their marks at the starting line. Although most district courts in the Fourth Circuit have adopted the receipt rule, this court finds some support for the proper service rule in *McKinney v. Board of Trustees of Mayland Community College,* 955 F.2d 924 (4th Cir.1992). *But see Shoemaker,* 814 F.Supp. at 496 n. 2. Although that case addressed a different issue, there is arguably some language of then Chief Judge Ervin that can be applied to resolve the receipt/proper service rules debate.

In *McKinney* the Fourth Circuit rejected the approach adopted by the Fifth Circuit Court of Appeals in *Getty Oil Corp. v. Insurance Co. of North America,* 841 F.2d 1254 (5th Cir.1988). In *Getty Oil* the Fifth Circuit held that under § 1446(b) in a multiple defendant case, all served defendants must join any removal petition submitted by the first defendant within thirty days after service on the first defendant. *Id.* at 1263. The Fourth Circuit rejected this rule and stated:

We do not find the *Getty Oil* conclusion to be logical. While the first served defendant clearly must petition for removal within thirty days, section 1446(b) does not imply in any way that later served defendants have less than thirty days in which to act. Although the *Getty Oil* court stated that its rule "promotes unanimity among the defendants," "unanimity" appears to be an inappropriate word choice. Rather, in establishing one fixed deadline for defendants served as much as thirty days apart, a better term for what the *Getty Oil* rule could lead to is "inequity." **We do not think that Congress, in providing for removal to federal court, intended to allow inequitable results.**

*McKinney,* 955 F.2d at 926–27 (citing *Getty Oil,* 841 F.2d at 1263). In making its deci-

sion, the *McKinney* court also rejected plaintiff's policy concerns that a plaintiff should be entitled to know at the earliest possible date in which forum he or she will be litigating—state or federal. *Id.* at 927. As already mentioned, this is the same policy cited by advocates of the receipt rule. *See Roe,* 38 F.3d at 303. Judge Ervin criticized this policy concern as follows:

> [T]he plaintiffs' policy concern only looks at forum selection from a plaintiff's point of view, assuming that there is something inherently bad about removal and "defeating" the plaintiff's choice of forum. To the contrary, by providing for removal in the first place, **Congress seems to believe that the defendant's right to remove a case that could be heard in federal court is at least as important as the plaintiff's right to the forum of his choice.**
>
> **Rather than favoring plaintiffs or defendants, we agree with the district court that the removal procedure is intended to be "fair to both plaintiffs and defendants alike."** [12]

*Id.* at 927 (emphasis added) (quoting *McKinney v. Board of Trustees of Mayland Community College,* 713 F.Supp. 185, 189 (W.D.N.C.1989), *aff'd in part, rev'd in part,* 955 F.2d 924).

This court believes that the proper service rule provides for the fairness which *McKinney* advocates. Courtesy copies, faxes, and e-mail delivered to whomever picks up the mail, receives the fax, or turns on the computer is not an inherently fair method to put a defendant on notice of the date on which the removal time period has begun, especially when the defendant is the party with the burden of establishing the right to removal and compliance with the requirements of § 1446(b). *Marler v. Amoco Oil Co.,* 793 F.Supp. 656, 658 (E.D.N.C.1992) (citing *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545 (5th Cir.1981)). Much like not requiring a defendant to guess as to when the period commences based on service on another de-

fendant, this court does not believe that a defendant should have to guess as to when his or her thirty day removal period commences based on receipt by an unauthorized person of an unconformed pleading. Finally, although faced with a removal question, it is important to note that in *McKinney,* Judge Ervin did not automatically turn to the *Shamrock* precept and rule against the defendant on the basis that the removal statutes are to be strictly construed against removal. Instead, he looked to the fairness inherent in the removal process and adopted the more equitable position which results in a more expansive reading of § 1446(b). *Cf.* 955 F.2d at 928; *see also Weimer v. City of Johnstown,* 931 F.Supp. 985, 989–92 (N.D.N.Y.1996) (discussing the differences between the first served or last served rules under § 1446 and adopting the first served rule).[13]

## C. Application of the Proper Service Rule

Under the proper service rule, Defendant must prevail because service under South Carolina state law was not proper and therefore this court must dismiss the action for lack of personal jurisdiction over the Defendant. The ease of application of the proper service rule is demonstrated by resort to the South Carolina statute and case law interpreting service of process on a corporation. In South Carolina, under *Roche v. Young Brothers, Inc.,* 456 S.E.2d 897 (S.C. 1995), a defendant must only show compliance with the state service rule. *Id.* at 900. *Roche* interpreted Rule 4(d)(8) not to require that the specific addressees sign the return receipt in the corporate setting. *Id.* at 900. In *Roche* the court stated:

> Rule 4, SCRCP serves at least two purposes. It confers personal jurisdiction on the court and assures the defendant of reasonable notice of the action. **We have never required exacting compliance with the rules to effect service of process.**

---

12. *See* Rohwer, Comment, *supra* note 4, at 361 ("The gravamen if removal is fairness.").

13. Many courts adopting the receipt rule for § 1446(b) also adopt the *Getty Oil* first served rule. *See e.g., Weimer,* 931 F.Supp. at 989–90;

*Pic–Mount Corp.,* 708 F.Supp. at 1114–16; *Haynes v. Deep South, Inc.,* Civ. Action No. 96–1237, 1996 WL 344140, at *2–3 (E.D.La. June 19, 1996) (unreported decision, available on Westlaw).

Rather, we inquire whether the plaintiff has sufficiently complied with the rules such that the court has personal jurisdiction of the defendant and the defendant has notice of the proceedings.

Service on a corporation may be made by hand delivering a copy of the summons and complaint to an officer of the corporation or to an authorized agent of the corporation.

*Id.* at 899 (citations omitted) (emphasis added). As further noted in the recent South Carolina Court of Appeals case, *Langley v. Graham,* 472 S.E.2d 259 (S.C.Ct.App.1996), "[s]ervice on a corporation may only be accomplished by service upon an authorized person; thus, a corporate defendant accepts service of process when a person authorized to accept service does so for the corporation." *Id.* at 260 n. 2. Under Rule 4(d)(8), a defendant can avoid a default judgment if it demonstrates to the court that the return receipt was signed by an unauthorized person. S.C.R.Civ.P. 4(d)(8). Finally, the question is clearly decided by *Moore v. Simpson,* 473 S.E.2d 64 (S.C.Ct.App., July 15, 1996), which states: "Without specific authorization to receive process, service is not effective when made upon an employee of the defendant, such as a secretary." *Id.* at 67 (citing 62B Am.Jur.2d *Process* § 234 (1990)). *Moore* again reiterates the principle that under South Carolina law, "exacting compliance with the rules is not required to effect service of process." *Id.* at 66.[14]

In this case, Ms. Huston—a receptionist at the corporate headquarters who was not an authorized agent of Defendant, nor an officer of the corporation, nor a person authorized to accept service—admits that she signed for the registered mail sent by Plaintiffs. However, because she was not a person authorized to accept service for Defendant, service of process was not valid on Defendant.

Therefore, Defendant's Motion to Dismiss due to lack of personal jurisdiction must be granted.

### III.  CONCLUSION

This court believes that the best rule to apply when faced with determining the timeliness of removal under § 1446(b) is the proper service rule. The proper service rule provides for certainty and fairness affording all parties with adequate notice. Because this court rejects the receipt rule, it is left with no other option but to grant Defendant's Motion to Dismiss.

It is therefore,

**ORDERED** that Defendant's Motion to Dismiss is **GRANTED,**

**ORDERED** that Plaintiffs' Motion to Remand is **DENIED,**

**AND IT IS SO ORDERED.**

**14.** Many federal courts reject the proper service rule claiming that the court should not become bogged down in deciding if a plaintiff perfectly complied with the technicalities of the applicable state's service of process laws. Those fears seem to be based on a belief that the proper service rule is in fact a "perfect service" rule. *Cf. Roe,* 38 F.3d at 302. Such fears are quickly dispelled in states such as South Carolina where exacting service is not required to acquire personal jurisdiction over the defendant and as such exacting service is not required for "proper service." *See also City Nat'l Bank of Sylacauga v. Group Data Servs.,* 908 F.Supp. 896, 898 n. 4 (N.D.Ala.1995) (adopting the proper service rule but in dicta stating: "The court is further of the opinion that the 30–day period begins with such service whether or not the service is defective, provided that the defective service is at least sufficient to provide a reasonable notice to defendant.").